UNITED STATES of America, ex rel.
Charles ECCLESTON, Petitioner,

v.

Robert J. HENDERSON, Superintendent
of Auburn Correctional Facility, Robert
Abrams, New York State Attorney General, Eugene Gold, District Attorney,
Kings County, Respondents.

No. CV 81–2295.

United States District Court,
E. D. New York.

Sept. 29, 1982.

Charles Eccleston, pro se.

815

Eugene Gold, Dist. Atty. of Kings County, Brooklyn, N. Y., for respondents; Jane S. Meyers, Asst. Dist. Atty., Brooklyn, N. Y., of counsel.

MEMORANDUM and ORDER

WEINSTEIN, Chief Judge:

Petitioner seeks a writ of habeas corpus on the grounds that his incarceration in Auburn Correctional Facility is illegal. He contends that his detention by the state of New York is unlawful for six reasons:

(1) he has been denied his federal constitutional right to a speedy trial in state court;

(2) the trial court's charge on intent shifted the burden of proof to the petitioner, thereby depriving him of his federal constitutional rights to a fair trial and due process of law;

(3) his convictions of two counts of felony murder were obtained by the use of evidence obtained pursuant to an unlawful arrest that violated the provisions of the Fourth Amendment and he was not afforded a full and fair hearing on the issue in state court;

(4) the evidence introduced at his state court trial failed to prove guilt beyond a reasonable doubt and this failure deprived him of due process of law guaranteed to him by the Fourteenth Amendment of the United States Constitution;

(5) the cumulative effect of errors by the trial court denied him due process of law; and

(6) the cumulative effect of misconduct by the prosecution in his state trial denied petitioner due process of law.

None of these claims has merit.

*Facts*

After a trial by jury, petitioner, Charles Eccleston, was convicted on November 18, 1975 of two counts of murder in the second degree. He was subsequently sentenced by Judge William T. Cowin to two terms of 25 years to life each, to be served consecutively. The conviction was affirmed by the

Appellate Division of the Supreme Court of New York in September, 1980 with one Associate Justice dissenting. Leave to appeal to the New York State Court of Appeals was denied in January, 1981.

Petitioner's conviction is founded upon the robbery and deaths of Birdie and Louis Rappaport. The robbery occurred on March 5, 1974 when, according to a statement he made to a homicide investigator on March 12, 1974, petitioner and his accomplice, John White (aka John Griffith), followed the Rappaports home and assaulted them in their apartment during the course of a robbery.

Birdie and Louis Rappaport, aged 71 and 77, respectively, had just left a fruit store on Lenox Road and Flatbush Avenue, and returned to their apartment, 55 Lenox Road # 4K. Petitioner and Mr. White watched as the Rappaports opened the door to their home. Mr. White attacked the couple, beat them severely, dragged them into the apartment and pulled her diamond engagement ring off Mrs. Rappaport's finger. Petitioner held the elevator door ajar and waited for his accomplice. Huntley Hearing, pp. 106–07.

Although the ring itself was never introduced into evidence, both petitioner's statement and the testimony of Melvin Calloway, a clerk at Fulton Pawnbrokers during the relevant time period, established that petitioner, using the ring as collateral, received a loan of $250 from Fulton Pawnbrokers on the day of the incident. Trial Transcript, pp. 284–85. Petitioner repaid the loan two days later and gave the ring to Mr. White who reportedly sold it.

Birdie Rappaport died on March 12, 1974 of wounds suffered during the assault. Trial Transcript, p. 319. Louis Rappaport died on or about May 3, 1974 of a condition which resulted from the same assault. Trial Transcript, p. 393.

Petitioner was brought to the 71st Precinct Crime Office of the New York Police Department on March 12, 1974 for questioning in what began as a robbery investigation and had just become a homicide inves-

tigation. Detective David McMann informed petitioner of his *Miranda* rights but did not interrogate him. When asked if he understood his rights, petitioner stood mute. Trial Transcript, p. 65. Five minutes later, Detective Arthur Semioli of the 12th Homicide Squad interviewed petitioner. Detective Semioli read petitioner the *Miranda* warnings again and petitioner then indicated that he understood his rights. Trial Transcript, pp. 120–21. Semioli then took an inculpatory statement from petitioner. Petitioner later directed several police officers to 55 Lenox Road and the fruit store from which he and Mr. White had followed the Rappaports. Semioli's testimony regarding petitioner's statements provided the details of the incident.

Petitioner's motion to suppress his inculpatory statement was denied. The trial judge found that it had not been coerced and that he had waived his constitutional rights.

### I. Speedy trial.

Petitioner asserts that his right to a speedy trial was abridged because of the 18 month gap between his arrest on March 12, 1974 and the commencement of his trial on September 24, 1975.

■ Four factors are examined to assess whether a defendant has been deprived of his Sixth Amendment right to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). First, the delay, the keystone of the issue, between petitioner's arrest and subsequent indictment and his trial is quite long. However, as evidenced by its specific exclusion from the six month limit imposed by CPL § 30.-30, homicide is an extremely serious crime and each case must be considered further in light of the particularities of the delay.

■ Second, the reasons for the delay of a defendant's trial must be primarily attributable to the government. That is not the case here. The briefs submitted by petitioner and respondent present conflicting accounts of the delay, but it appears that motions by petitioner and his acquiescence in motions by the government are at least partially responsible. Huntley Hearing, p. 47.

Third, petitioner did not assert his right aggressively enough to warrant the relief now sought. He made only one motion to dismiss the indictment for failure to provide a speedy trial. That motion, made on December 12, 1974, was brought as part of an omnibus motion primarily aimed at reducing bail.

■ The fourth, and most significant, factor identified in *Barker, supra*, is prejudice to the petitioner caused by the delay. The right to a speedy trial is designed to prevent prejudice to the defendant's interests in:

(1) avoiding oppressive pretrial incarceration;

(2) minimizing defendant's anxiety and concern; and

(3) limiting the possibility that the defense will be impaired.

Given the seriousness of this indictment, in addition to the numerous felony charges simultaneously pending against him in Kings County (Respondent Brief, p. 21), which suggest that he would have been incarcerated in any event, this admittedly long delay cannot be said to have caused oppressive pretrial incarceration or to have significantly increased anxiety or concern. There is no indication that petitioner's defense preparation or the presentation of his friendly witness at the Huntley hearing was prejudiced by the time lag.

### II. Charge on intent.

The trial judge instructed the jury that "under our law a person is presumed to intend the natural and probable consequences of his acts." Trial Transcript, pp. 552, 557. Petitioner objects to this charge on the ground that it impermissibly shifts the burden of proving every element of each crime to him, citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

The instruction challenged in *Sandstrom* was: "The law presumes that a person in-

tends the ordinary consequences of his voluntary acts." 442 U.S. at 515, 99 S.Ct. at 2453, 61 L.Ed.2d at 45. The Court found that a reasonable juror could have interpreted the charge as either a conclusive or a burden-shifting presumption on intent, an element of deliberate homicide, the crime charged. 442 U.S. at 519, 99 S.Ct. at 2456–57, 61 L.Ed.2d at 48. Because either interpretation would have deprived defendant of his right to due process of law, the court held that instruction to be unconstitutional.

■ The judge in petitioner's trial explained to the jury that "this presumption, like all presumptions, may be accepted or rejected by you." Trial Transcripts, pp. 552, 557. This explanation eliminated the likelihood that the jury interpreted the presumption as conclusive. The charge would have been interpreted as describing a permissive inference. Cf. *County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

Here, there was, in any event, no real question about intent. The question was really one of identity. If petitioner followed the deceased home and, with a confederate, broke into a home and assisted in the forcible stealing of a valuable ring, he was guilty. Any jury would have found him guilty whatever the charge on intent.

■ Intent was never an issue. On summation the only point made by his counsel was that defendant had not been proved to be a person connected with the robbery that was the predicate for a finding of murder. Transcript, p. 488 ff. Thus the finding of guilt washed out any possible error in the charge on intent. If there was an error, it was harmless beyond a reasonable doubt.

It is not necessary to consider respondent's argument, relying on *Cupp v. Naughten*, 414 U.S. 141, 146–147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) and *People v. Russell*, 266 N.Y. 147, 153, 194 N.E. 65 (1934), that the charge viewed in its entirety passes constitutional muster. Respondent's Brief, p. 26. The judge charged the jury that they were required to probe petitioner's mind to determine if he had the requisite intent and that they might infer that intent from the facts and circumstances of the case as they determined them. Trial Transcript, pp. 551–53, 556–57. Additionally, the boiler-plate charge that the government always has burden of proving guilt beyond a reasonable doubt was given numerous times. Trial Transcript, pp. 536, 537, 538, 553, 554, 567, 574. These instructions would probably not have nullified an impermissible charge. The court in *Sandstrom* made clear that general instructions regarding proof beyond a reasonable doubt and presumptions of innocence until proven guilty are

> "not rhetorically inconsistent with a conclusive or burden shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied."

442 U.S. at 518, n.7, 99 S.Ct. at 2456, n.7, 61 L.Ed.2d at 47, n.7. Here, as pointed out above, the circumstances, once identity was accepted, compelled the jurors to find beyond a reasonable doubt that petitioner had the intent to break in, to assault, to steal and to keep the property so brutally taken.

Respondent also argues that federal habeas corpus review of this issue is barred because of petitioner's failure to object to the trial court's instruction in a timely manner as required by New York Criminal Procedure Law § 470.05(2). Respondent Memorandum of Law, p. 2. The record indicates that at trial petitioner's counsel objected to the jury charge in its entirety by verbal objections (Trial Transcript, p. 589) and by unsuccessfully requesting particular instructions (Trial Transcript, pp. 590, 593–616) in compliance with New York CPL § 470.05(2). We need not consider this problem since any error was harmless.

## III. Fourth Amendment rights.

■ This court is precluded from considering petitioner's claim that his conviction was obtained pursuant to an unlawful arrest. See *Stone v. Powell*, 428 U.S. 465, 495, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976).

## IV. Guilt beyond a reasonable doubt.

 Petitioner's felony murder convictions are based upon his participation in the felonies of burglary, assault and robbery. His admissions and other substantial confirming evidence more than sufficed to prove his guilt beyond a reasonable doubt.

## V. Trial court errors.

 The burden of demonstrating that an erroneous instruction was sufficiently prejudicial to support a collateral attack on the constitutionality of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). The question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *id.*, 97 S.Ct. at 1737 (citing *Cupp v. Naughten*, 414 U.S. at 147, 94 S.Ct. at 400, 38 L.Ed.2d 368). An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law, *id.* Petitioner has not met this heavy burden. There is nothing to indicate that he has been prejudiced by the court's jury instructions.

 There is nothing in the record to indicate that any of the trial court judge's behavior was so offensive as to deprive petitioner of his right to a fair trial. While the judge did play a relatively active role in the trial, he specifically instructed the jury to disregard any impression they may have gained that he believed or disbelieved items of evidence or that his questions were entitled to any more weight than those of the attorneys. Trial Transcript, p. 585. That instruction sufficed to eliminate any error that may have otherwise existed.

## VI. Prosecutor's behavior.

 Petitioner's counsel made two objections during the prosecutor's summation that the prosecutor was misstating the testimony. Trial Transcript, pp. 528, 530. Both objections were sustained. The court, moreover, charged the jury that it is their recollection of the testimony and not that of either counsel, that is controlling. Trial Transcript, p. 535. This instruction sufficed to neutralize any prejudice petitioner may have suffered by the prosecutor's misstatements of testimony.

 It is not apparent from the record that the importance of the concepts of reasonable doubt and presumption of innocence was depreciated by the prosecutor's use of the term "loose pebbles" when referring to them. When examined in the context of his analogy of the evidence adduced to cement holding together a brick wall, there is no constitutional error.

 Petitioner received a fair trial. A reading of the trial record and appellate briefs and other documents suggest that he was afforded due process and that the finding of guilt was authorized by the properly admissible evidence.

### Conclusion

The petition is dismissed. Because the *Sandstrom* issue is a substantial one, a certificate of probable cause is granted.

A copy of this Memorandum and Order shall be sent to petitioner and all counsel. Upon completion of all appellate procedures, the state records shall be returned to the District Attorney of Kings County.

So ordered.