■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARSHALL BRAILSFORD, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Hellenbrand, J.), rendered January 5, 1982, convicting him of murder in the second degree and robbery in the first degree, after a nonjury trial, and imposing sentence.

Judgment affirmed.

Defendant was convicted of murder in the second degree pursuant to subdivision 3 of section 125.25 of the Penal Law, commonly known as felony murder. The aforesaid section contains an exception which affords a defendant "an opportunity to fight his way out of a felony charge by persuading a jury, by way of affirmative defense, that he not only had nothing to do with the killing itself but was unarmed and had no idea that any of his confederates was armed or intended to engage in any conduct dangerous to life" (Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law, § 125.25, p 401; see Penal Law, § 125.25, subd 3, pars [a], [d]). We find that defendant has failed to meet his burden of proof with respect to the affirmative defense. Defendant testified, in his own behalf,

that he did not know that Rickey Smith, his cohort, was carrying a gun and that he had never seen Smith with a gun on any prior occasion. It bears noting, however, that defendant's credibility was partially impeached during cross-examination when, after denying that he had ever possessed a gun, he was confronted with the fact that he had been found in possession of a loaded .22 caliber revolver in 1979.

Moreover, the record does not support a finding that defendant had no reasonable ground to believe that Smith was armed or that he intended to engage in conduct likely to result in serious physical injury. The original intention of defendant and his cohort was to seek out and avenge themselves against a youth who had allegedly attempted to rob Smith a few days earlier. When said youth could not be found, Smith decided to rob a bystander who was sitting on a bench near the school yard of certain gold chains. Defendant was to accompany Smith and "watch his back". Under the totality of the circumstances, defendant should have recognized the possibility that Smith was armed. The very fact that defendant knew, by his own admissions, that Smith's original purpose was to avenge himself for an attempted robbery, should in itself have suggested the possibility that Smith had a gun. The evidence was legally sufficient to prove defendant's guilt beyond a reasonable doubt. Further, defendant failed to meet his burden on the affirmative defense (see *People v Santanella,* 82 AD2d 869).

Defendant also objects to the prosecutor's use of Family Court records for the purpose of impeaching his credibility. It is argued on appeal that defendant had a privilege requiring that those records remain confidential and that this privilege was violated by improper cross-examination. Defense counsel, however, failed to object to the use of the records on confidentiality grounds. Rather, his only objection related to the fact that defendant's arrest did not ultimately result in convictions. As such, this claim was not preserved for appellate review as a matter of law.

Assuming, *arguendo,* that the issue was properly before this court, we note that defendant's claim is devoid of merit. Defendant's objections are based upon sections 166 and 783 of the Family Court Act. Section 166 does not make Family Court records confidential (see Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Court Act, § 166, p 118). It provides, rather, that such records shall not be open to indiscriminate public inspection. The prosecutor in this case obtained defendant's Family Court records pursuant to a judicial subpoena. Thus, the records were properly in his possession.

Neither do we find a violation of section 783 of the Family Court Act. It has long been recognized that a witness may be questioned as to any immoral, vicious, criminal or wrongful act involving moral turpitude (see *People v Sorge,* 301 NY 198). Section 783 does not alter this rule. Rather, that section prohibits inquiry as to the existence of a Family Court record itself, or the fact that a defendant had been declared a juvenile delinquent or was the subject of "PINS" (person in need of supervision) proceedings. It does not prohibit inquiry into the facts and circumstances underlying the reason for defendant's involvement with the Family Court in the first instance. These underlying facts may be utilized for impeachment purposes (see *People v Hunter,* 88 AD2d 321, 323; *Matter of Brunetti v Scotti,* 77 Misc 2d 388).

Applying these rules to the instant case, we conclude that the prosecutor did not act impermissibly inasmuch as he questioned defendant only with respect to the underlying incident. The fact that the prosecutor was relying upon defendant's juvenile record did not surface until defense counsel challenged the prosecutor's good-faith basis for asking his questions. Because the case was tried without a jury, defendant suffered no prejudice from the prosecutor's mention of the words "juvenile record". The prosecutor was properly in possession of defendant's Family Court records and the questioning of defendant was likewise proper.

Defendant's remaining contention has been reviewed and found to contain no merit. Titone, J. P., Weinstein, Rubin and Boyers, JJ., concur.