**Michael BURRESS, Petitioner,**

v.

**Robert J. HENDERSON, Superintendent, Auburn Correctional Facility, Respondent.**

**No. CIV–88–1407C.**

United States District Court, W.D. New York.

Jan. 27, 1993.

R. Nils Olsen, Legal Assistance Program, Getzville, NY, for petitioner.

Louis A. Haremski, Asst. Erie County Dist. Atty., Buffalo, NY, for respondent.

CURTIN, District Judge.

Petitioner filed a petition for a writ of habeas corpus challenging his conviction for felony murder, attempted robbery, and criminal possession of a dangerous weapon. Counsel was appointed to represent the petitioner, and the matter was referred to Honorable Carol E. Heckman, United States Magistrate Judge, for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Her report recommends that the petition be denied on the merits without an evidentiary hearing and that no certificate of probable cause be issued. Petitioner has objected to the Magistrate's report; and pursuant to 28 U.S.C. § 636(b)(1), this court is required to make a *de novo* determination on

those portions of the report and recommendation to which objection is made.

Petitioner claims that insufficient evidence was elicited during trial to permit the jury to convict the defendant. Petitioner argues that there was no evidence to support a jury conclusion that petitioner knowingly drove codefendant Battles to the Holiday Inn on Genesee Street. Battles was the individual who shot and killed a police officer during the robbery. During this time, petitioner Burress was in his automobile outside of the Holiday Inn. He claims not to have any knowledge of what Battles was doing during this period.

There was sufficient circumstantial evidence to support the jury's verdict of guilty. That has been reviewed by the Magistrate Judge and need not be repeated here; but I have reviewed it and find that it is sufficient.

Petitioner objects to the Magistrate Judge's conclusion that his Sixth Amendment right to a speedy trial was not violated. Petitioner contends that the delay between his arrest on October 20, 1977, and his trial on May 14, 1979, constituted a denial of his right to a speedy trial. This constituted a 19-month delay and raises a presumptively meritorious speedy trial challenge. The trial court attributed the delay to circumstances surrounding the preparation for trial. There is not reflected in the record any deliberate attempt by either side to delay the record in order to aid or hamper the defense, nor is there any record to substantiate petitioner's argument that the prosecution negligently delayed the trial.

Some periods must be laid to the activities of the petitioner himself; so that as a matter of a constitutional right, there is not sufficient information to conclude that the defendant was not afforded a speedy trial.

Furthermore, petitioner also argues that the jury charge given by the trial judge was incomplete and confusing. The Magistrate Judge concluded that the claim is barred because of a state procedural default. In this connection, the Appellate Division, in affirming petitioner's conviction, ruled that petitioner had failed to comply with N.Y.Crim.Proc.Law § 470.05, which requires

that objections to jury charges must be given to the trial court. The court found that no objections to the charge of the court relating to the affirmative defense to felony murder or the charge on intent have been preserved for our review. Therefore, this procedural default barred review of petitioner's challenge to the jury charge. It follows that habeas corpus review of the propriety of the jury instructions is not available. Petitioner has failed to show good cause for his failure to raise objections to the charge at the time of trial.

I have reviewed petitioner's argument that he was not afforded effective assistance of counsel and find that that is without merit.

For the reasons set forth, the Magistrate Judge's report and recommendation is made the judgment of this court, and the petition is dismissed. This court has had an opportunity to make a *de novo* review of the record and the arguments made in the state court and before the Magistrate Judge and concludes that this petition presents no federal question of substance worthy of the intention of the Court of Appeals. Accordingly, in addition to dismissing the petition, the court denies a certificate of probable cause.

I hereby certify that any appeal from this judgment would not be taken in good faith and deny leave to appeal as a poor person pursuant to 28 U.S.C. § 1915(a). Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, Buffalo, New York, 14202.

So ordered.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This habeas corpus petition was referred to the undersigned by the Hon. John T. Curtin to hear and report. For the reasons set forth below, I recommend that the District Court dismiss the petition.

### FACTS

Shortly before 1:00 a.m. on October 20, 1977, Dwight Battles entered the Holiday

Inn on Genesee Street in Cheektowaga, New York (T. 103).[1] Ronald Antes was the night clerk on duty at the front desk. After inquiring as to the availability of rooms, Battles went behind the desk and pointed a gun at Antes' head (T. 104).

Battles removed currency from the cash register drawer, triggering a silent alarm (T. 105). He then demanded that Antes open the safe in the office at the rear of the desk. Antes explained that he did not have the key to the door concealing the safe, nor did he know the combination to the safe. Battles continued to demand more money, and Antes gave him cash from a cigar box kept in a file cabinet (T. 105–06). Battles then ordered Antes to remove his clothes, and Battles took Antes' watch (T. 106–09).

At this point, the night auditor Mike Siracuse entered the office (T. 109–10). Battles ordered Siracuse to take off his clothes and get down on the floor with Antes (T. 110). Battles then went back out to the front desk (T. 115).

In response to the silent alarm, Cheektowaga Police Officers Robert Walker and David Tolsma arrived at the Holiday Inn during the course of the robbery. Walker and Tolsma entered through the main entrance, and observed Battles standing at the front desk (T. 119–22). Battles turned his head toward the officers, and then turned back toward the desk. As Officer Tolsma stepped back and turned to look down the foyer, Battles turned from the desk, crouched, and began firing, first at Officer Walker and then at Officer Tolsma (T. 123–24).

Walker drew his revolver and returned fire at Battles, who was now moving backwards and sideways toward a service corridor while continuing to fire at Tolsma. Out of the corner of his eye, Walker saw Tolsma fall (T. 125). Battles then directed his fire back toward Walker while proceeding toward the corridor. When he reached the corridor,

Battles ran down the corridor to a service exit and escaped (T. 125–27). Officer Tolsma later died as a result of the head wounds he received during this exchange of gunfire.

Diane Constantino was in the lounge at the Holiday Inn that night, and shortly before 1:00 a.m. heard "loud popping sounds" coming from the front desk area (T. 159). She then saw a black male run through the dining room of the lounge, and heard someone say that he had a gun (T. 162). She picked up her things and left the lounge.

She exited the building, got in her car and drove out of the parking lot toward Sugg Road (T. 163). As she was about to make a right onto Sugg Road, she observed a black male driving a white mid-size American-made car with its lights out (T. 165–66).

At approximately 12:55 a.m. that same night, Cheektowaga Police Officers Paul Cramer and Gerald Barber received a call over the radio of their vehicle instructing them to investigate a holdup at the Holiday Inn on Genesee Street (T. 177–78; H. 72). About three-tenths of a mile from the Holiday Inn, the officers observed a white Oldsmobile with its headlights off traveling westbound on Genesee Street away from the direction of the Holiday Inn (T. 179). Officer Cramer turned his vehicle around and followed the Oldsmobile, stopping it at the entrance for the west terminal of the Buffalo International Airport (T. 180). Officer Cramer approached the Oldsmobile with his revolver drawn, and a black male exited from the vehicle with his hands above his head (T. 180).

Officer Cramer conducted a brief pat-down of the driver, and Officer Barber read him his *Miranda* rights and conducted a brief search of the vehicle (H. 7–11). The driver consented to a search of the trunk (T. 11). He then produced a New York State driver's license issued to Gary Moore (T. 183–84). He told the officers that he was coming from

---

1. Numerical references preceded by "T" refer to pages of the trial transcript; those preceded by "H" refer to pages of the transcript of the *Huntley* hearing; those preceded by "S" refer to pages of the transcript of the state court's decision on Defendant/Petitioner's motion to suppress; and, those preceded by "C" refer to the transcript of the state court's decision on the People's motion to consolidate the trials of Michael Burress and Dwight Battles. These transcripts, along with Petitioner's other state court records, have been filed with the Clerk of this Court and are made part of the record on this Petition.

Erie Community College (H. 9). Pursuant to the officers' request, he followed them to the Holiday Inn for possible identification by the witnesses to the robbery. When no witness identified him, he was released (H. 11, 61).

Later on the morning of October 20, 1977, at approximately 8:00 a.m., several police officers arrived at 91 Laurel Street in the City of Buffalo, which was the home of Lenora Olds Burress, the registrant of the white Oldsmobile stopped by Officers Cramer and Barber (H. 142–43). After entering the residence and questioning Mrs. Burress concerning the automobile, Buffalo City Police Detective Robert Grabowski observed a black male sitting on the couch in the living room (H. 143). Detective Grabowski asked the man his name several times, but received no response (T. 285–86). Grabowski then went into the kitchen and asked Mrs. Burress who the man was. She identified him as her husband, Petitioner Michael Burress (T. 286).

Detective Grabowski immediately ran a spot warrant check on Petitioner, and was informed by the dispatcher that there was an outstanding Buffalo City Court bench warrant for his arrest for failure to appear on a charge of obstruction of governmental administration (T. 288; H. 144). Detective Grabowski then informed Petitioner that he was under arrest on the basis of the outstanding warrant, and read him his *Miranda* rights from a card (T. 288). When asked if he understood the rights read to him, Petitioner did not respond (H. 144). He did not ask for a lawyer (H. 144–45).

Petitioner put on his clothes, was handcuffed, and taken out of the Laurel Street premises (T. 289). In the police car on the way to headquarters, Detective Grabowski questioned Petitioner regarding the Oldsmobile registered to his wife, to which Petitioner responded: "All I did was drive the car. I didn't have anything to do with the holdup" (T. 290; H. 145–46). At that point in time, the police had told Defendant nothing about a robbery, only that a police officer had been killed.

Upon arrival at Buffalo Police Headquarters, Petitioner was taken to the Homicide Bureau interview room on the third floor, and was again advised of his rights by Buffalo Police Detective Melvin Lobbett (T. 292; H. 136). At 9:09 a.m., Petitioner signed the *Miranda* rights card from which Detective Lobbett had read (T. 292). Detective Edwin Gorski informed Petitioner that he was being questioned in connection with the death of a police officer who was shot during a holdup at the Cheektowaga Holiday Inn, and that his car was observed in the area (H. 181). Petitioner initially denied any involvement in the incident (*id.*). He denied knowing Battles in the past, claiming that he had met him just prior to the robbery and gave him a ride to the hotel. He was shown a photograph of Battles and himself found at his home, and identified Battles as "Anthony Williams."

Eventually, however, Petitioner made the following admissions. He had met Dwight Battles at about 8:30 p.m. the night before, and they went to Petitioner's Laurel Street residence. At approximately 11:30 p.m., they left in his wife's white Oldsmobile. They stopped for gas, and bought some wine. They drove to the Genesee Street Holiday Inn, and pulled up at the front entrance. Battles got out. Petitioner then saw a police car pull up behind him. He started driving away, and almost immediately heard shots and glass breaking. He drove away with the lights off, and was stopped by Cheektowaga police and questioned. He gave his name as Gary Moore, which was the name on the driver's license he showed the police. He was taken inside the Holiday Inn, and was shown a body that was lying underneath a white sheet. He was questioned, released, and went home (H. 183).

Petitioner was arraigned on murder charges on October 21, 1977, in Cheektowaga Town Court. On November 23, 1977, Petitioner was charged by the Erie County Grand Jury in a twelve-count murder indictment. All counts of the indictment were predicated on accessory liability under N.Y. Penal Law § 20.00.

On February 16–21, 1979, a *Huntley* [2] hearing was held to determine the voluntariness of Petitioner's statements to the police.

2.  *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965).

In an oral decision rendered on March 12, 1979, Hon. William J. Ostrowski (J.S.C.) denied Petitioner's suppression motion. Judge Ostrowski found that Petitioner had failed to demonstrate the illegality of any "search" or "seizure" that may have taken place at the Burress residence on the morning of October 20, 1977 (S. 16–17).

By oral order of March 13, 1979, Judge Ostrowski denied the People's motion to consolidate Petitioner's trial with the trial of Dwight Battles (C. 12–14).

Petitioner's jury trial commenced on May 14, 1979, with Judge Ostrowski presiding. The court initially heard, and denied, Petitioner's motion to dismiss the indictment on speedy trial grounds (T. 11–24). On May 23, 1979, the jury found Petitioner guilty of felony murder (count 1), attempted felony murder (count 2),[3] robbery in the first degree (count 5), attempted robbery in the first degree (count 7), and criminal possession of a weapon in the second degree (count 12).

On July 11, 1979, Judge Ostrowski sentenced Petitioner to indeterminate concurrent prison terms of twenty years to life on the felony murder conviction, ten to twenty years on the attempted felony murder conviction, ten to twenty years on the robbery conviction, five to ten years on the attempted robbery conviction, and five to ten years on the conviction for criminal possession of a weapon. Item 6, Exh. D.

On or about May 26, 1984, Petitioner filed a motion *pro se* to vacate judgment pursuant to N.Y.Crim.Proc.Law § 440.10, based on his alleged warrantless arrest. Item 6, Exh. K. By order dated June 4, 1984 (*id.*), Judge Ostrowski denied Petitioner's motion, finding that no issue of illegal seizure of evidence was raised under *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

With the exception of the attempted felony murder charge (*see* n. 3, *supra*), the Appellate Division, Fourth Department affirmed Petitioner's judgment of conviction on July

11, 1986. *People v. Burress*, 122 A.D.2d 588, 505 N.Y.S.2d 272 (4th Dept.1986). Leave to appeal to the Court of Appeals was denied on September 29, 1986. 68 N.Y.2d 810, 507 N.Y.S.2d 1027, 499 N.E.2d 876 (1986). Item 6, Exh. J.

On November 6, 1987, Petitioner again moved to vacate the judgment of conviction, asserting as grounds (1) ineffective assistance of counsel, (2) unconstitutionality of the felony murder statute as applied to Petitioner, and (3) excessive sentence. Item 6, Exh. L. In an opinion dated March 7, 1988, Judge Ostrowski denied Petitioner's motion. On June 1, 1988, the Appellate Division denied permission to appeal this decision and, on August 6, 1988, leave to appeal was denied by the Court of Appeals. *Id.*

Petitioner filed a Writ of Error *Coram Nobis* dated May 5, 1988 seeking to vacate the Appellate Division's July 11, 1986 affirmance of the trial court's judgment of conviction. In his *coram nobis* application, Petitioner asserted the same grounds of ineffective assistance of counsel as were asserted in his second motion to vacate. Item 6, Exh. M. By order dated July 7, 1988, a panel of the Appellate Division denied Petitioner's application on the papers. *Id.*

Petitioner filed the instant petition *pro se* on December 21, 1988. On January 30, 1990, an amended petition was filed on Petitioner's behalf, asserting the following grounds for habeas corpus relief: (1) insufficiency of evidence supporting the judgment of conviction; (2) denial of right to a speedy trial; (3) denial of right to a fair trial as a result of the judge's incomplete and confusing jury charge; (4) ineffective assistance of counsel; and, (5) warrantless arrest. Item 15. Respondent answered the amended petition on May 2, 1990.

## DISCUSSION

### I. The Sufficiency of the Evidence at Trial.

Petitioner's first claim for habeas corpus relief is that insufficient evidence was pro-

---

**3.** The conviction for attempted felony murder was reversed and the count dismissed by the Appellate Division, Fourth Department. The court ruled that there could be no attempt to commit a crime that did not involve specific intent. *People v. Burress*, 122 A.D.2d 588, 589, 505 N.Y.S.2d 272, 273 (4th Dept.). *app. denied*, 68 N.Y.2d 810, 507 N.Y.S.2d 1027, 499 N.E.2d 876 (1986).

duced at trial upon which the jury could have found beyond a reasonable doubt the essential elements of the offenses for which he was convicted. Those offenses are defined in the New York Penal Law in pertinent part as follows:

### § 125.25 Murder in the second degree

A person is guilty of murder in the second degree when:

\*   \*   \*   \*   \*   \*

3. Acting either alone or with one or more persons, he commits or attempts to commit robbery ... and, in the course of and in furtherance of such crime or immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants; except that in any prosecution under this subdivision, in which the defendant is not the only participant in the underlying crime, it is an affirmative defense that the defendant:

(a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and

(b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and

(c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and

(d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

\*   \*   \*   \*   \*   \*

### § 160.15 Robbery in the first degree

A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:

1. Causes serious physical injury to any person who is not a participant in the crime;

2. Is armed with a deadly weapon; or

3. Uses or threatens the immediate use of a dangerous instrument; or

4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm. . . .

\*   \*   \*   \*   \*   \*

### § 265.03 Criminal possession of a weapon in the second degree

A person is guilty of criminal possession of a weapon in the second degree when he possess a machine-gun or loaded firearm with intent to use the same unlawfully against another.

\*   \*   \*   \*   \*   \*

### § 20.00 Criminal liability for conduct of another

When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.

\*   \*   \*   \*   \*   \*

### § 110.00 Attempt to commit a crime

A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.

When reviewing a claim of sufficiency of the evidence in the context of a habeas corpus petition "... the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

A review of the record before this court, in the light most favorable to the prosecution, convinces this court that a rational trier of fact could readily have found that Petitioner was guilty of the crimes charged.

■ As to the convictions for robbery, attempted robbery and criminal possession of a weapon, Petitioner argues that the People failed to prove that he possessed the requisite mental state to commit such crimes. This argument has no merit. When the sections defining these charges (§§ 160.15, 265.03 and 110.00, *supra*) are read in conjunction with the section on criminal liability for the conduct of another (§ 20.00), it is clear that Petitioner could be found guilty on these charges so long as he shared the requisite intent to effect a premeditated plan.

Petitioner's contradictory statements to the police provide ample circumstantial evidence supporting the convictions. He admitted meeting with Battles three hours prior to the robbery and driving him to the hotel. He admitted that he knew Battles for some time before that night. He was seen by Diane Constantino as she was leaving following the shootout. Although Petitioner claimed at trial that he knew nothing of the robbery or that Battles had a gun, he fled from the scene, exited the car with his hands raised when stopped by police, used a false name, and gave false information about where he had been.

Later that morning, after Petitioner was arrested on the outstanding bench warrant, and before the police mentioned the robbery, Petitioner stated: "All I did was drive the car. I didn't have anything to do with the holdup." He denied knowing Battles, and identified Battles as being "Anthony Williams" in a photo showing Battles and Petitioner together.

These admissions, inconsistent statements and circumstantial proof provide ample evidence of guilt as to the charges of robbery, attempted robbery and criminal possession of a weapon.

■ As to the felony murder conviction, Petitioner agrees that there are two essential elements of the offense: (1) the commission or attempted commission of one of nine enumerated felonies (which include robbery), and (2) the death of a nonparticipant during the course of committing the felony. It is undisputed that the second element of the offense was established. As to the first, Petitioner argues that the evidence produced at trial was insufficient to prove a shared intent with Battles to commit or attempt robbery. *People v. Simmons*, 143 A.D.2d 857, 858, 533 N.Y.S.2d 128, 129 (2nd Dept.), *app. denied*, 73 N.Y.2d 860, 537 N.Y.S.2d 506, 534 N.E.2d 344 (1988); *People v. Perez*, 121 A.D.2d 406, 407, 502 N.Y.S.2d 529, 530 (2nd Dept.), *app. denied*, 68 N.Y.2d 772, 506 N.Y.S.2d 1056, 498 N.E.2d 158 (1986). This argument has been discussed and rejected in the preceding paragraphs.

■ The remaining argument raised by Petitioner relates to the affirmative defense to felony murder. The felony murder statute affords a defendant "an opportunity to fight his way out of a felony charge by persuading a jury, by way of affirmative defense, that he not only had nothing to do with the killing itself but was unarmed and had no idea that any of his confederates was armed or intended to engage in any conduct dangerous to life." *People v. Brailsford*, 106 A.D.2d 648, 648, 482 N.Y.S.2d 907, 907 (2nd Dept.1984) (quoting Hechtman, Practice Commentaries, McKinney's N.Y.Penal Law § 125.25). The Defendant must prove four elements to establish the affirmative defense of felony murder: (1) that the defendant did not commit the homicide or aid its commission; (2) that the defendant was not armed; (3) that the defendant had no reasonable ground to believe that any other participant was armed; *and* (4) that the defendant had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury. The defendant must establish each of the elements by a preponderance of the evidence. *See* N.Y.Penal Law §§ 125.25(3)(a-d), 25.-00(2).

Here, the proof at trial established that the Petitioner did not commit the homicide. It also established that Petitioner was unarmed. Thus, Petitioner clearly proved by a preponderance of evidence the second element of the affirmative defense.

The issue here is whether Petitioner also proved the first, third and fourth elements by a preponderance of the evidence. Or, stated another way, the evidence must have been sufficient to convince the jury that,

"while the defendant himself did not possess a gun or commit the homicidal act, he did take part in [the] robbery, aiding an accomplice he knew to be armed." *People v. Simmons, supra,* 143 A.D.2d at 857–58, 533 N.Y.S.2d at 129; *see also People v. Sanchez,* 167 A.D.2d 489, 562 N.Y.S.2d 161 (2nd Dept. 1990), *app. denied,* 77 N.Y.2d 881, 568 N.Y.S.2d 924, 571 N.E.2d 94 (1991).

Viewing the evidence presented at Petitioner's trial in light of these legal standards, the jury could have concluded beyond a reasonable doubt that Petitioner intended to participate in the robbery that resulted in the death of Officer Tolsma, and that he had reasonable cause to believe that Battles was armed or that Battles intended to engage in conduct likely to cause serious physical injury. The jury also could have inferred that Petitioner aided Battles in the commission of the homicide by meeting with Battles for three hours before the robbery and by driving him to the scene of the crime.

It is true that the People's evidence on this score was largely circumstantial. However, such evidence was fully tested on cross examination and was sufficiently probative. The jury's rejection of the affirmative defense was proper. *People v. Simmons, supra,* 143 A.D.2d at 857, 533 N.Y.S.2d at 129.

## II. Speed Trial.

■ Petitioner contends that the delay between his arrest on October 20, 1977 and his trial on May 14, 1979 constitutes a denial of his right to a speedy trial so as to warrant habeas corpus relief.

The Supreme Court has held that the proper method to establish whether a defendant has been denied his or her Sixth Amendment right to a speedy trial is by applying a balancing test in which the conduct of both the prosecution and defendant are weighed. *Barker v. Wingo,* 407 U.S. 514, 529–30, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972). Factors to be considered include the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2191.

### A. Length of Delay.

Petitioner contends that the nineteen-month delay between arrest and trial raises a presumptively meritorious speedy trial challenge, thus triggering automatic consideration of the remaining *Barker* factors. As stated in *Barker,* "because of the imprecision of the right to speedy trail, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." 407 U.S. at 530–31, 92 S.Ct. at 2191–92.

*Barker* itself involved a delay of over five years between arrest and trial during which the defendant was incarcerated for 10 months, but the Court refused to presume a speedy trial violation based on the length of the delay alone. Instead, the Court considered this factor in relation to the stated reasons for the delay, the failure of defendant to assert his speedy trial right, and the lack of prejudice caused by the delay. According to the Court, even after an "extraordinary" delay of over five years, the defendant's speedy trial right was not violated because the prejudice was minimal and, for apparent tactical reasons, the right was not asserted. *Id.* at 533–35, 92 S.Ct. at 2193–94.

As Petitioner points out, however, the Second Circuit has found delays of less than a year sufficient to trigger the *Barker* analysis. *See, e.g., United States v. Vila,* 599 F.2d 21 (2d Cir.), *cert. denied,* 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979) (delay of 126 days); *United States v. Rucker,* 586 F.2d 899 (2d Cir.1978) (11 month delay). In recognition of the nineteen-month delay at issue, the court will consider the remaining *Barker* factors.

### B. Reasons for the Delay.

In its consideration of Petitioner's motion to dismiss the indictment, the trial court found that the delay between arrest and trial did not deprive Petitioner of his right to a speedy trial (T. 11–24). The court attributed the delay to circumstances pertaining to trial preparation by both defense and prosecution. Those circumstances included the pendency of pretrial motions, the necessity of preparation for the separate trials of Petitioner and his accomplice, and the busy schedule of Petitioner's assigned counsel (*Id.*).

In addition, the record does not reflect any deliberate attempts by either side to delay the trial in order to aid or hamper the defense, *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, nor does the record substantiate Petitioner's contention that the prosecution negligently delayed the trial.

Petitioner has conceded accountability for the 45-day period between November 27, 1977 and January 7, 1978 as time allotted for the preparation and filing of defense motions (it should be noted here that no defense motions were filed until October, 1978, after the prosecution had moved for consolidation). This period, plus the time excluded by the trial court for hearing and decision of pretrial motions, as well as the time necessary to bring the accomplice to trial, considerably shortens the length of time which this court must consider as grounds for a speedy trial violation, and weighs heavily in favor of Respondent.

### C. *Assertion of Right to Speedy Trial.*

Petitioner concedes that he did not assert his right to a speedy trial until May 14, 1979, the day the trial began, when he moved to dismiss the indictment on speedy trial grounds. Even if the filing of that motion were to be imputed to the October, 1978 filing date of Petitioner's omnibus defense motion, such conduct would not be recognized by this court as the type of "aggressive" assertion of speedy trial rights necessary to warrant the relief sought. *See Barker*, 407 U.S. at 531–32, 92 S.Ct. at 2192–93 (failure to assert right will make it difficult for defendant to prove denial of speedy trial); *United States ex rel. Eccleston v. Henderson*, 534 F.Supp. 813, 816 (E.D.N.Y.), *aff'd*, 697 F.2d 289 (2d Cir.), *cert. denied*, 459 U.S. 871, 103 S.Ct. 157, 74 L.Ed.2d 131 (1982) (motion to dismiss indictment on speedy trial grounds, brought as part of omnibus motion filed nine months after arrest and nine months before trial, was not aggressive enough assertion of right).

### D. *Prejudice to Petitioner.*

Petitioner asserts that his nineteen-month incarceration between arrest and trial was prejudicial to his liberty rights. While the interest in preventing oppressive pretrial incarceration is one of the important interests enumerated in *Barker* as protected by the Sixth Amendment right to a speedy trial, 407 U.S. at 532, 92 S.Ct. at 2193, prejudice is usually measured in terms of how the delay has affected the ability of the defendant to prepare his defense. *Id.*

There is nothing in the record to indicate that Petitioner's defense was impaired as a result of the delay. Despite Petitioner's apparent dissatisfaction with his assigned counsel, Petitioner's counsel competently prepared, presented and argued his case. Furthermore, there were no attempts by Petitioner to challenge his incarceration as oppressive until the close of the *Huntley* hearing on February 21, 1979.

Finally, the Appellate Division considered and rejected Petitioner's speedy trial challenge to the indictment, finding that "[n]o prejudice in the defense of his case attributable to the delay is claimed and no facts are established in the record warranting either dismissal of the indictment on speedy trial grounds or a hearing." *People v. Burress*, 122 A.D.2d at 589, 505 N.Y.S.2d at 273 (citing *People v. Johnston*, 105 A.D.2d 1010, 1011, 483 N.Y.S.2d 458 (3rd Dept.1984)).

Based on these factors, this court finds that the delay between Petitioner's arrest and trial did not result in a deprivation of Petitioner's Sixth Amendment right to a speedy trial.

### III. Jury Instructions.

Petitioner contends that the trial judge's failure to instruct the jury on the elements of intent for the crimes charged, as well as his failure to instruct on the affirmative defense to felony murder, so confused and entangled the proceedings as to render the trial unfair and a violation of due process.

The Appellate Division, in affirming Petitioner's conviction, ruled that Petitioner failed to comply with N.Y.Crim.Proc.Law § 470.05, which requires that objections to jury charges be contemporaneously raised with the trial court. The Court stated: "No objections to the charge of the court relating to the affirmative defense to felony murder

... or to the charge on intent have been preserved for our review as a matter of law." *People v. Burress*, 122 A.D.2d at 589, 505 N.Y.S.2d at 273.

This procedural default bars review of Petitioner's challenge to the jury charge. *Rosenfeld v. Dunham*, 820 F.2d 52, 54 (2d Cir.), *cert. denied*, 484 U.S. 968, 108 S.Ct. 463, 98 L.Ed.2d 402 (1987).

> When a state appellate court refuses to consider the merits of a petitioner's claims on account of his procedural failure to preserve his rights by objection at the time, then a federal court may not review those merits in a collateral habeas corpus proceeding, unless petitioner demonstrates both good cause for and actual prejudice resulting from his procedural noncompliance with the contemporaneous objection rule.

*Id.* (citing *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982), and *Wainright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977)).

The Appellate Division's rejection of Petitioner's challenge to the jury instructions rested firmly and unambiguously on his procedural failure to object at a time "when the court had an opportunity of effectively changing" the instructions. N.Y.Crim.Proc. Law § 470.05(2). Thus, in the absence of both "cause" and "prejudice," habeas corpus review of the propriety of the jury instructions is not available. *Martinez v. Harris*, 675 F.2d 51, 54–55 (2d Cir.), *cert. denied*, 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982).

Petitioner has failed to demonstrate good cause for his failure to contemporaneously raise objections to the charge. His only ostensible "cause" argument is that his counsel incompetently acquiesced in the trial court's improper charge to the jury. However, the record does not support such an argument. The need for the Court to charge on all elements of the crimes charged was obviated when Petitioner's counsel stipulated in open court that, since Dwight Battles had already been tried and convicted of all of the charges in the indictment, all of the acts charged as having been committed by Battles were, in fact, committed by him (T. 86–88). Rather than show his counsel's ineffective-

ness, this stipulation demonstrates a competent strategic attempt to eliminate the prejudicial effect of presenting the details of Battles' homicidal acts to Petitioner's jury, leaving only the issue as to whether Petitioner intentionally aided Battles in the commission of those acts. Such conduct does not amount to a showing of "cause" sufficient to excuse Petitioner's failure to contemporaneously object to the jury charge.

In any event, Petitioner cannot meet the "prejudice" requirement for habeas corpus review. As the Appellate Division specifically noted in its affirmance of Petitioner's conviction, Petitioner "received a more favorable charge than he was entitled to since the instructions of the court effectively incorporated the elements of the affirmative defense to felony murder and shifted the burden to the People to disprove the elements of this defense." 122 A.D.2d at 589, 505 N.Y.S.2d at 273. As noted above in this report, it is normally the defendant's burden to prove all the elements of the affirmative defense by a preponderance of the evidence.

Furthermore, the record shows that the trial court properly instructed the jury on the required element of intent for all of the crimes charged, as follows:

> The word "intentionally" is defined in Section 15.05(1) of the Penal Law as follows: "A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct."

(T. 559).

Accordingly, the court concludes that Petitioner has failed to show good cause for and actual prejudice resulting from his procedural noncompliance with the contemporaneous objection rule. Habeas corpus relief based on allegedly improper jury instructions is therefore barred.

## IV. Ineffective Assistance of Counsel.

Petitioner claims that his trial counsel's failure to pursue the constitutional implications of the warrantless and non-consensual entry into his home by police, as well as his failure to object to the jury charge, rendered

counsel's assistance ineffective. The record simply does not support this claim.

■ In order to obtain habeas corpus relief on this ground, Petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As stated by the Supreme Court in *Strickland:*

> This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment ... [and] that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064.

■ The record clearly demonstrates that Petitioner's original trial counsel effectively, if not successfully, moved and argued pursuant to *People v. Huntley* for the suppression of the statements made by Petitioner subsequent to his allegedly illegal arrest. The trial court thus considered the constitutional implications of allowing such statements to be admitted into evidence when it ruled in favor of the prosecution, and the appellate court affirmed that ruling.

Defense counsel is not required to move for suppression on every conceivable ground in order to meet the level of competence required by the Sixth Amendment. *United States v. DiTommaso,* 817 F.2d 201, 215 (2d Cir.1987); *United States v. Aulet,* 618 F.2d 182, 187 (2d Cir.1980). It is sufficient that counsel exercised professional discretion in deciding whether sufficient grounds for the motion existed. *LiPuma v. Comm'r, Dept. of Corrections,* 560 F.2d 84, 93 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977).

Thus, defense counsel's decision to move for suppression of the statements on the ground that Petitioner did not properly waive his right to counsel, rather than on the ground that the statements were the fruit of an illegal search, could reasonably have been based on counsel's permissible discretionary call as to the likely merit of the motion. Counsel could have decided that the "illegal search" argument was not likely to be successful, given the circumstances of the consensual nature of the entry into the Laurel Street residence and Petitioner's subsequent arrest on an outstanding bench warrant.

The record further shows that trial counsel presented a vigorous defense case in which he demonstrated a thorough knowledge of the facts and pertinent law. This court has already discussed trial counsel's competence with regard to Petitioner's claim of improper jury charge.

Based on the record before it, this court finds that Petitioner has failed on both prongs of the *Strickland* test. There is no showing that counsel's performance was unreasonably deficient under prevailing professional standards, and there is no showing that the result of the trial would have been different but for counsel's performance. *United States v. Matos,* 905 F.2d 30, 32 (2d Cir.1990).

V. Pretextual Arrest.

■ Petitioner's final ground for habeas corpus relief is that the entry of twelve armed officers into Petitioner's home to investigate the ownership of a motor vehicle, and the subsequent arrest of Petitioner on an outstanding bench warrant, constitutes pretext for otherwise impermissible custodial interrogation on an unrelated homicide. This court finds no support in the record for such a contention.

Petitioner's arrest was based upon a warrant legally issued by Buffalo City Court, the existence of which became known to police upon a routine check after discovering Petitioner's identity. Once the officers had ascertained the existence of the outstanding warrant, no other determination had to be made as to whether there was probable cause to arrest Petitioner. As the Appellate Division found, once in custody on this warrant, police were not foreclosed from questioning him on the unrelated homicide. 122 A.D.2d at 589, 505 N.Y.S.2d at 273.

Moreover, there is nothing in the record to indicate that the officers' entry into the Burress residence was not consensual, or was otherwise illegal. Twelve armed officers certainly were not necessary to inquire as to the ownership and control of the vehicle registered to Petitioner's wife. However, considering the nature of the information available at the early stages of the investigation into Officer Tolsma's shooting, the connection between the vehicle and the incident, the use of the vehicle by a black male who lived at another address, and other circumstances surrounding the investigation, such police presence does not amount to illegal, egregious or offensive conduct violative of Petitioner's due process rights.

According to the record, the officers involved in Petitioner's arrest, while numerous, conducted themselves within appropriate legal and procedural standards. There was thus no "exploitation of [an] illegality" for the purpose of obtaining evidence not otherwise obtainable, *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), and habeas corpus relief is not available on this ground.

### CONCLUSION

Based on the foregoing, the District Court should dismiss the petition in its entirety.

DATED: Buffalo, New York

November 18, 1992

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days of receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Weso-*

*lek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Petitioner and the Respondent.

SO ORDERED.