John MEATLEY, Petitioner,

v.

Christopher ARTUZ, Superintendent,
Greenhaven Correctional Facility,
Respondent.

No. 93 CV 5541.

United States District Court,
E.D. New York.

June 2, 1995.

John Meatley, Beacon, NY, pro se.

Richard A. Brown, Dist. Atty., Queens County, Kew Gardens, NY (Alexander H. Gardner, of counsel), for respondent.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

John Meatley brought this *pro se* action under 28 U.S.C. § 2254 for a writ of habeas corpus challenging his 1987 conviction in Queens County Supreme Court for attempted murder, robbery, assault and criminal possession of a weapon.

In his petition Meatley says that he was denied due process because (1) the trial court "refused to suppress all statements attributed to him," (2) the trial court "refused to suppress all identification testimony" pertaining to him, (3) the trial court denied him his right to be present when it answered a note from the jury during deliberations, and (4) he was denied effective assistance of trial and appellate counsel.

In a memorandum of law Meatley also contends that he was denied due process because his arraignment was unreasonably delayed so the police could question him. Because he proceeds *pro se*, the court will treat the memorandum as incorporated into his petition. *See generally Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

### I

The evidence produced at trial and the state court proceedings may be summarized as follows.

At approximately 12 p.m. on May 9, 1986 Anthony Rhodes, Lasson Ross and Ronald Kirby were in the living room of an apartment in Queens generally known as a narcotics trafficking location when three men, one of whom wore his hair in dreadlocks, entered and announced a robbery.

The dreadlocked man held a gun to Ross' head and demanded to know where the "stash," meaning money and drugs, was hidden. After Ross replied that he did not know, the dreadlocked man shot Kirby, pistol-whipped both Ross and Rhodes and again asked about the location of the stash. Rhodes then told him.

Ross led the dreadlocked man and one of his companions to another room where the stash was hidden. The men then returned to the living room and the dreadlocked man, not satisfied that Ross had relinquished all of the money and drugs, again struck Ross and Rhodes and began knocking over furniture and searching the apartment.

At that point, Harold Campbell, a neighbor, entered the apartment. The dreadlocked man hit Campbell, brought him into the living room and then forced Rhodes, Ross, Kirby and Campbell to turn over their jewelry. After firing another shot that lodged in a chair the dreadlocked man and his companions fled with the money, drugs and jewelry. The witnesses estimated that the entire incident took between eight and twenty minutes.

Police Officer Thomas McGovern and others arrived at the scene about ten minutes later and began an investigation. At approximately 1:00 a.m. five days later, on May 14, 1986, McGovern arrested Meatley for the robbery and gave him a so-called *Miranda* warning. Meatley said that he understood his rights and that he did not wish to answer any questions. McGovern then went to another location to arrest another suspect and returned to bring Meatley to the 105th precinct station house, placing him in a holding cell at about 2:00 a.m.

At about 4:00 a.m. McGovern brought Meatley to Central Booking in Queens where he remained until 10:30 a.m. At that time, McGovern returned Meatley to the station house holding cell. At about 2:15 p.m. McGovern again gave Meatley a *Miranda* warning, and Meatley again declined to answer any questions.

At about 2:30 p.m. Meatley was placed in a lineup with five "fillers." Unlike the fillers, Meatley wore his hair in dreadlocks. The police provided Meatley and the fillers with baseball-type caps to cover their hair.

Rhodes, Campbell and Ross separately viewed the lineup. Each recognized Meatley as the man who had pistol-whipped him or another and shot Kirby.

Sometime between 2:35 and 3:00 p.m. McGovern told Meatley that he had been identified by the witnesses. Meatley then began crying and stated that he had "not meant to shoot" Kirby and that he had told Kirby "not to go to sleep" because he had not wanted Kirby to die.

On October 14 and December 1, 1986 the trial court held a *Wade/Huntley* hearing upon Meatley's motions to suppress testimony regarding the identifications and inculpatory statements. Meatley contended that the lineup was improperly suggestive because his hair was visible beneath his cap and that the inculpatory statements were made involuntarily. The trial court denied the motions on January 12, 1987.

After Meatley was convicted by a jury in the Queens County Supreme Court, the trial judge sentenced him to concurrent terms of twelve and one-half to twenty five years for the attempted murder, eight and one-third to twenty five years on each of three of the nine robbery counts, twelve and one-half to twenty ty five years on each of the remaining robbery counts, five to fifteen years for the assault, and five to fifteen years for possession of a weapon.

Meatley appealed the conviction to the Appellate Division, Second Department. Represented by different counsel, he made six arguments. He claimed a denial of due process on the grounds that (1) his arraignment was unreasonably delayed, (2) the trial court refused to suppress his alleged statements, and (3) the trial court refused to suppress identification testimony. Appellate counsel also contended that, as a matter of state law, (4) the trial court should have given a "missing witness" charge, (5) the trial court should have set aside the verdict as to attempted murder because the jury found Meatley's co-defendant not guilty and the verdict was inconsistent in light of the court's charge, and (6) the sentence was excessive.

The Appellate Division affirmed, holding that the trial court did not err in admitting the inculpatory statement and identification testimony and that Meatley's other claims were either meritless or unpreserved for review. *People v. Meatley,* 162 A.D.2d 721, 722, 557 N.Y.S.2d 421, 421–22 (2d Dep't 1990).

By letter application that did not raise any issue, even in general terms, but attached his thirty-four page Appellate Division brief, Meatley sought leave to appeal to the New York Court of Appeals. The Court of Appeals denied leave on October 17, 1990. *People v. Meatley,* 76 N.Y.2d 942, 563 N.Y.S.2d 71, 564 N.E.2d 681 (N.Y.1990).

On April 8, 1993 Meatley filed a motion for a writ of error *coram nobis* in the Appellate Division, saying that his appellate counsel was ineffective. The Appellate Division denied the motion on June 3, 1993.

This petition followed.

## II

■ To satisfy the exhaustion requirement of 28 U.S.C. § 2254(b), a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition. *See Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991). A petitioner may achieve exhaustion either by direct appeal or through collateral post-conviction remedies. *See, e.g., Lloyd v. Walker,* 771 F.Supp. 570, 573 (E.D.N.Y.1991).

■ Although exhaustion does not require a petitioner to cite "chapter and verse" of hornbook law, the federal constitutional nature of the claims must be "fairly presented" to the state court. *See Abdurrahman v. Henderson,* 897 F.2d 71, 73 (2d Cir.1990).

■ If a habeas petition contains both exhausted and unexhausted claims, it must be dismissed. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Nonetheless, a federal court may deem a federal claim to be exhausted and "not require that [it] be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris v. Reed,*

489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 1043 n. 9, 103 L.Ed.2d 308 (1989). In such a case, a petitioner no longer has "remedies available in the courts of the State" within the meaning of 28 U.S.C. § 2254(b).

■ Meatley exhausted his claim of ineffective assistance of appellate counsel by filing a writ of error *coram nobis.* *See Snype v. Hoke,* 728 F.Supp. 207, 210–12 (S.D.N.Y. 1990); *see generally People v. Bachert,* 69 N.Y.2d 593, 516 N.Y.S.2d 623, 509 N.E.2d 318 (N.Y.1987). The order of the Appellate Division on the application for a writ of error *coram nobis* is not appealable to the New York Court of Appeals. *See Levine v. Commissioner of Correctional Services,* 44 F.3d 121, 124 (2d Cir.1995); *People v. Marsicoveteri,* 79 N.Y.2d 913, 581 N.Y.S.2d 664 (N.Y. 1992).

■ Meatley did not raise in the state courts his claims that he received ineffective assistance of trial counsel or that he was denied due process when the trial court answered a question from the jury outside his presence. Thus, Meatley did not use the state court facilities available to him. Because New York law now bars Meatley from raising these claims in any New York state court, *see* N.Y.Court Rules § 500.10(a), N.Y.Crim.Proc.L. § 440.10, *Washington v. James,* 996 F.2d 1442, 1447 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994), the court deems those claims to be exhausted for purposes of habeas corpus here. *See Harris,* 489 U.S. at 263 n. 9, 109 S.Ct. at 1043 n. 9 (1989).

■ Meatley did raise in the Appellate Division on direct appeal his claims that the trial court should have suppressed his alleged statements and the identifications and that his arraignment was unreasonably delayed.

There is a question as to whether Meatley "fairly presented" these three claims to the New York Court of Appeals on his application for leave to appeal. As noted above, the letter application raised no issue but simply attached the Appellate Division briefs.

In *Grey v. Hoke,* 933 F.2d 117 (2d Cir. 1991), the petitioner presented three claims for federal habeas review. He addressed

each of the claims in his brief before the Appellate Division, but his letter application to the New York Court of Appeals requested that that court review only one of the claims. The Court of Appeals for the Second Circuit held that attaching the appellate brief did not fairly present the other two claims to the New York Court of Appeals. *Id.* at 120. *See also Thebner v. Miller,* 788 F.Supp. 714, 717 (E.D.N.Y.1992) (inclusion of single sentence that referred in general way to various claims raised in appellate brief insufficient to apprise Court of Appeals of those claims); *Matias v. Hoke,* 703 F.Supp. 324, 325 (S.D.N.Y.1989).

■ This court has found no authority as to the adequacy of a letter application failing to raise any specific claim but attaching an appellate brief addressing a number of claims. No doubt, as the Court of Appeals for the Second Circuit has presumed, the New York Court of Appeals does not have " 'a duty to look for a needle in a paper haystack.' " *Grey,* 933 F.2d at 120 (citations omitted). Under New York Rules of Court § 500.10(a) an application for leave to appeal to the New York Court of Appeals may be made in letter form and "should identify the issues on which the application is based" with "particular written attention" to "identifying problems of reviewability and preservation of error."

But the rule also requires the applicant to submit the briefs filed by both sides in the court below, and the Court of Appeals' "standard practice" is to review "not just the letter but the briefs appended thereto." *Coleman v. Warden, Taconic Correction Facility,* No. 87 CIV 8762, 1990 WL 130735 (S.D.N.Y. Sept. 5, 1990) at *1. The rule says nothing about the consequences if the letter application makes no mention of the issues on which the application is based.

The headings for points I, II and III in Meatley's brief in the Appellate Division on direct appeal from the conviction stated in bold capital letters that his "rights were violated" when the police delayed his arraignment (Point I), the trial court refused to suppress all statements attributed to him (Point II), and the trial court refused to suppress all identification testimony (Point

III), and cited the United States Constitution Amendments V, VI and XIV as well as the New York State Constitution.

The order of the Appellate Division deals explicitly with points II and III.

The certificate denying leave to appeal in this case and signed by a judge of the Court of Appeals verifies that "upon application timely made" by Meatley and "upon the record and proceedings herein [citing the order of the Appellate Division], there is no question of law which [sic] ought to be reviewed by the Court of Appeals."

This court concludes that the papers submitted on the application for leave to appeal did not require the New York Court of Appeals to look for a needle in a haystack. If the Court considered the Appellate Division briefs at all, it was fairly alerted at the outset of the legal arguments to Meatley's contentions that he was denied his federal constitutional rights because of the delay in his arraignment and the failure of the trial court to suppress the identifications and the statements. The respondent does not argue otherwise. Furthermore, presumably the Court of Appeals read the Appellate Division order discussing points II and III.

### III

The court considers on the merits the claims that the trial court should have suppressed certain inculpatory statements and identifications and that Meatley received ineffective assistance of appellate counsel.

### A

■ Meatley says that his inculpatory statements should have been suppressed because, although he declined to answer questions after receiving *Miranda* warnings, McGovern told him, solely for the purpose of eliciting a statement from him, that he had been identified.

■ On habeas review this court may independently consider whether Meatley's inculpatory statements were coerced. *See Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 450–51, 88 L.Ed.2d 405 (1985). But in so doing, the court defers to findings of fact

by the state court, except where those findings have no fair support in the record or where a petitioner can establish "by convincing evidence that the factual determination by the State court was erroneous." *Sumner v. Mata*, 449 U.S. 539, 550, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981) (emphasis in the original); *see also* 28 U.S.C. § 2254(d).

If after receiving *Miranda* warnings an accused invokes his right to remain silent, any interrogation "must cease." *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981). For *Miranda* purposes, "interrogation" includes not only "express questioning" but also its "functional equivalent," that is, "any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).

The trial court concluded, after an evidentiary hearing, that Meatley's statements were not coerced, finding that "although he was in custody for more than thirteen (13) hours, he was given his Miranda warnings on three separate occasions, and no statement was taken a significant time after the administration of such warnings." (citations omitted). The trial court made no explicit finding regarding the allegedly inquisitory nature of McGovern's comments.

The record demonstrates that the trial court erred in finding that Meatley received *Miranda* warnings on three occasions. It appears instead that Meatley was read these rights only twice, once immediately following his arrest and then again approximately thirty to forty minutes before he made the statements at issue.

But the record also shows that after Meatley twice declined to answer questions, McGovern did not subject him to "questioning or its functional equivalent." *Innis*, 446 U.S. at 301, 100 S.Ct. at 1689. McGovern merely informed Meatley that he had been identified by three witnesses. Nothing in the record indicates that McGovern "should have known" that his statement was "reasonably likely to elicit an incriminating response." *Id.* at 303, 100 S.Ct. at 1691. Thus the trial court did not err in concluding that the prosecution had established beyond a reasonable doubt the "voluntariness" of Meatley's statements, that is, that the police had not elicited the statements.

**B**

Meatley argues that all identification testimony pertaining to him should have been suppressed because the lineup was impermissibly suggestive. He says that (1) McGovern improperly told Rhodes that one of the suspects would be in the lineup and (2) his distinctive hairstyle was visible despite the cap that he wore.

Due process may be violated when, as judged under the totality of the circumstances, the identification procedure used is so impermissibly suggestive as to give rise to "a very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). If the procedure is found to be suggestive, the habeas corpus court, in order to determine whether or not the evidence must be excluded, should review such factors as "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199, 93 S.Ct. at 382.

Rhodes testified at trial that McGovern told him that "he had the people who robbed us" and that one of them would be in the lineup. But McGovern testified to the contrary at trial and during the *Wade/Huntley* hearing, and the trial court found McGovern's testimony to be credible. Because Meatley has not shown by "convincing evidence" that that finding was erroneous, this court defers to the trial court's determination of credibility. *See* 28 U.S.C. § 2254(d).

As to Meatley's second point, this court has examined a photograph of the lineup and notes that Meatley's hair is slightly more visible than that of the fillers. But that circumstance is not sufficient to render the

lineup suggestive. "There is no requirement that a suspect in a lineup be surrounded by people identical in appearance." *Id.* at 530; *see also United States v. Reid,* 517 F.2d 953, 965–66 n. 15 (2d Cir.1975). Moreover, the court defers to the conclusion of the Appellate Division that the police took "reasonable steps" to conceal Meatley's dreadlocks by providing the lineup participants with hats. See 28 U.S.C. § 2254(d); *People v. Meatley,* 162 A.D.2d at 722, 557 N.Y.S.2d at 422.

Furthermore, even if Meatley could show that the lineup was unduly suggestive, the totality of the circumstances demonstrates that the identifications made by Rhodes and Ross were reliable. Those witnesses each testified at trial that (1) during the robbery, he had a clear view of Meatley's face at close range for several minutes, and (2) at the lineup, he recognized Meatley by his face rather than by his hair.

### C

■ Meatley says he received ineffective assistance of appellate counsel because his counsel failed to argue that the trial court improperly (1) answered a question from the jury and (2) allowed deliberations to resume, both outside of his presence.

■ To prove ineffective assistance of counsel, Meatley must show, among other things, that "counsel's performance was deficient," that is, that the attorney "made errors so serious" that the representation fell below "an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984).

Meatley fails to make such a showing. Even if these claims had merit, the court determines that the appellate brief submitted on Meatley's behalf did not fall below an objective standard of reasonableness. Meatley's counsel briefed six separate claims. His decision to forsake others was a reasonable professional judgment. *See Jones v. Barnes,* 463 U.S. 745, 753, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983) ("A brief that raises every colorable claim runs the risk of burying good arguments ... in a verbal mound made up of strong and weak conten-

tions."); *Gulliver v. Dalsheim,* 739 F.2d 104, 107 (2d Cir.1984) (courts should not second guess appellate counsel's "reasonable professional judgments") (citations omitted).

### IV

■ Meatley says that he was denied due process because his arraignment was delayed in order to procure incriminating statements from him. The Appellate Division said that that issue and others were either meritless or not preserved for appeal, citing *People v. Allyn,* 92 A.D.2d 692, 460 N.Y.S.2d 379 (3d Dep't 1983), a case in which the court concluded that a defendant's claim regarding his delayed arraignment was not preserved for appeal.

It is reasonable for this court to assume that the Appellate Division found Meatley's arraignment claim to be barred on independent and adequate state procedural grounds. *See generally Quirama v. Michele,* 983 F.2d 12, 14 (2d Cir.1993). That claim is procedurally defaulted.

Meatley also says that (1) he received ineffective assistance of trial counsel and (2) he was denied due process because the trial court answered a question from the jury outside his presence. Because Meatley failed to exhaust these claims in state court and no longer may do so, they too are procedurally defaulted. *Washington,* 996 F.2d at 1447.

■ This court may not consider on habeas corpus procedurally defaulted claims unless Meatley can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

Meatley makes no showing of cause for his failure to raise these claims in state court. Moreover, he has not demonstrated that failure to review the claims will result in a fundamental miscarriage of justice. He has not shown that it is more likely than not that the purported constitutional violations "resulted in the conviction of one who is actually

innocent." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *see also Schlup v. Delo,* —— U.S. ——, ——, 115 S.Ct. 851, 860–62, 130 L.Ed.2d 808 (1995). The court will not consider the merits of these claims.

## V

The petition is denied.

So ordered.