Michael **THEBNER**, Petitioner,

v.

David L. **MILLER**, Superintendent, **Wallkill Correctional Facility**, Respondent.

No. CV 91–4525.

United States District Court, E.D. New York.

April 9, 1992.

See also 168 A.D.2d 653, 563 N.Y.S.2d 484.

---

Michael Thebner, pro se.

James Catterson, Suffolk County Dist. Atty. by Michael J. Miller, Riverhead, N.Y., for respondent.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

On February 11, 1989, Michael Thebner ("petitioner") was convicted of Manslaughter in the Second Degree pursuant to New York Penal Law § 125.15[1], reckless manslaughter, and was subsequently sentenced to an indeterminate term of incarceration of five to fifteen years. Petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the following grounds: (1) his statements to the police were involuntary statements in violation of due process; (2) evidence obtained from his home was the product of an illegal search and seizure; (3) the evidence presented at trial failed to prove petitioner's guilt beyond a reasonable doubt; and (4) the sen-

tence imposed on petitioner was harsh and excessive, constituting cruel and unusual punishment under the Eighth Amendment. For the reasons discussed below, the petition is denied.

## I. BACKGROUND

The following material facts are not contested by the parties. At approximately 3:00 p.m. on January 26, 1987, during the course of an argument, petitioner, who was then seventeen years old, took a loaded .22 caliber rifle from a gun rack in his bedroom and, from close range, killed his seventeen year old girlfriend, Christine Iwanicki, with a single shot. The shooting occurred in petitioner's bedroom, in his parents' house in Mt. Sinai, New York.

Police officer Litsch received radio notification of the shooting at 3:16 p.m., arrived at the Thebners' house shortly thereafter, and secured the scene of the shooting.

At about 3:40 p.m. Detectives Olin and Niegocki arrived at the Thebner's house. Detective Olin took statements from petitioner's father and brother and Detective Niegocki went to speak to petitioner. Niegocki found petitioner outside the house in a police car being comforted by Kerry Evrard, a Mt. Sinai volunteer fireperson who had suggested that he sit in the car in order to stay warm. Niegocki asked Evrard to leave the car so that he could talk to petitioner, but when he found that petitioner was too upset, he asked Evrard to return and try to calm him. A few minutes later, Niegocki returned to the car, orally advised petitioner of his *Miranda* rights, and began to interview him. Based on petitioner's responses, at approximately 4:10 p.m. Niegocki read him his *Miranda* rights again, this time from a printed form which petitioner initialed. They then began working on a written statement.

At approximately 4:30 p.m., Homicide Detectives Rein and Anderson arrived at the scene. They found petitioner's rifle with five bullets in it lying on the floor, a spent shell casing on the couch, and a live shell behind the couch. They also found an

expended bullet on the floor and several boxes of bullets in the gun rack.

At about 4:50 p.m. petitioner and Niegocki were still working on the first page of his written statement. At Detective Rein's suggestion, petitioner agreed to go the Sixth Precinct to take a Firearms Discharge Residue Test and Detective Rein informed petitioner's father as to where his son was going.

Petitioner arrived at the Sixth Precinct at approximately 5:30 p.m. and the test was completed by approximately 6:50 p.m. Between 5:30 p.m. and 7:30 p.m., petitioner sat with Detective Blasko in a lieutenant's office at the precinct. Petitioner was quiet, made no requests, and the office door remained open. From 7:30 p.m. to 8:15 p.m. petitioner was alone in the office.

At 8:15 p.m. Detectives Anderson and Misegades entered the office for the first time, introduced themselves to petitioner, and read him his *Miranda* rights. Petitioner signed and dated a waiver and then made oral statements to Detective Misegades concerning the day's events. At approximately 9:00 p.m., Detective Rein entered the office, told petitioner that his story did not fit with the physical evidence found in his bedroom, and questioned him regarding his position vis-a-vis Iwanicki at the time of the shooting. Detective Anderson then asked additional questions and petitioner, after again being advised of his *Miranda* rights, made a second written statement. This statement was completed by 10:50 p.m. and the detectives returned petitioner to his home by 11:30 p.m.

In his initial oral and written statements, petitioner maintained that the shooting was an accident. He stated that he took the rifle from the rack, that he threatened to use it to kill himself, that he ejected a live round from the chamber, that he did not realize that the rifle was loaded, that he approached Iwanicki with the rifle pointed away from her, that Iwanicki grabbed the barrel of the rifle, and that the rifle accidently discharged during the ensuing struggle.

However, in his later oral and written statements, petitioner stated that he had owned the rifle for four years, that he had shot it approximately fifty times, that he had a hunting license and had taken a firearms safety course, that he knew the gun was loaded, and that he told Iwanicki, "I'll kill you" as he poked her in the chest with the rifle. He also stated that after he poked her with the rifle, Iwanicki slid off the couch in which they were sitting and when she rose, he pulled the trigger. He insisted, however, that he did this in order to scare her and that he had hoped that another live round would not chamber when he ejected one live round.

Information regarding the shooting was presented to a Suffolk County Grand Jury on February 17–18, 1987. Petitioner was indicted under § 125.15[1], in that he "recklessly caused the death of Christine Iwanicki by discharging a .22 caliber rifle."

At an extensive pre-trial hearing, conducted from September 14, 1987 to November 2, 1987, petitioner contended, as he does here, that his statements to the police were the product of an illegal arrest and that evidence found at his home was the product of an illegal search and seizure. The prosecution called nine witnesses and petitioner called two. On September 1, 1988, Judge Tisch issued an opinion finding that petitioner was not in police custody on January 26, 1987; that his statements were voluntary and not subject to suppression as the fruit of illegal custodial interrogation; and that the physical evidence found in petitioner's bedroom was properly seized as part of a preliminary search.

During the trial, the prosecution called sixteen witnesses, introduced the statements that petitioner had made to the police on January 26, 1987, and presented the autopsy report which found that Iwanicki's wounds were consistent with the muzzle of the rifle being about an inch away from her arm and from six to fifteen inches from her chest when she was shot. Petitioner called no witnesses. On February 11, 1989 the jury found petitioner guilty of manslaughter in the second degree.

On April 7, 1989, petitioner filed his notice of appeal to the Appellate Division. In that appeal, petitioner raised all the points

that are raised in the instant petition. The conviction was affirmed on December 24, 1990. *People v. Thebner*, 168 A.D.2d 653, 563 N.Y.S.2d 484 (2d Dep't 1990).

On or about January 9, 1990, petitioner sought leave to appeal to the Court of Appeals. In his letter in support of that application, petitioner argued that the Court of Appeals should review the search and seizure issue regarding the police officers' search of his bedroom. After discussing that issue extensively, he added the following sentence: "Numerous other issues are raised in defendant-appellant's brief all of which deserve review by this court." In a letter to the Court of Appeals dated February 11, 1991, Respondent addressed only the search and seizure issue. The Court of Appeals denied leave to appeal on March 26, 1991. *People v. Thebner*, 77 N.Y.2d 911, 569 N.Y.S.2d 943, 572 N.E.2d 626 (Ct.App.1991).

## II. DISCUSSION

■■■ The exhaustion requirement in 28 U.S.C. § 2254 dictates that, absent unusual circumstances, a petitioner must exhaust all available state remedies before bringing a federal habeas corpus petition. "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the highest court of the state." *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990) (per curiam); *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 191 (2d Cir.1982) (citation omitted). Moreover, in order to fairly present a federal claim in state court, a petitioner must inform the state court of all material factual allegations and legal premises of the claim. *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971)).

■■■ As stated above, in his appeal to the Appellate Division petitioner raised all the issues currently before this Court and the state court affirmed his conviction. *Thebner*, 563 N.Y.S.2d at 484. However, in his letter to the Court of Appeals seeking further review of his conviction, petitioner set forth factual and legal arguments only as to the warrantless search of his bedroom

and the seizure of evidence during that search. In addition, petitioner wrote: "Numerous other issues are raised in defendant-appellant's brief all of which deserve review by this court." The Court of Appeals denied leave to appeal. *Thebner*, 569 N.Y.S.2d at 943.

Similarly, in *Grey v. Hoke*, 933 F.2d 117 (2d Cir.1991), the habeas petitioner presented three claims to the Appellate Division but requested review by the Court of Appeals only as to his search and seizure claim. The petitioner in *Grey* also attached his brief to the Appellate Division, which discussed all three claims, to his application to the Court of Appeals. The Second Circuit held that only the search and seizure claim was preserved: the other two claims were abandoned because the petitioner had failed to fairly apprise the Court of Appeals of them. *Id.* at 120–21. Furthermore, because the petitioner had forfeited two claims in state court, he was barred from litigating those claims in a federal habeas proceeding, "absent a showing of cause for the procedural default and prejudice resulting therefrom." *Id.* at 121 (citing *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–2509, 53 L.Ed.2d 594 (1977)).

This Court holds that Thebner's inclusion in his application to the Court of Appeals of a single sentence which refers, in a general way, to the various claims raised in his sixty-seven page brief to the Appellate Division, is insufficient to fairly apprise the Court of Appeals of the factual and legal issues in those claims. *See Grey*, 933 F.2d at 120 (citing *Mele v. Fitchburg Dist. Ct.*, 850 F.2d 817, 822 (1st Cir.1988) (appellate court does not have a duty to look for a needle in an "outsized paper haystack")). Accordingly, petitioner's first, third and fourth claims, that his statements to the police were involuntary statements in violation of due process; that the evidence presented at trial failed to prove his guilt beyond a reasonable doubt; and that the sentence imposed on him was harsh and

excessive are dismissed without reaching the merits.

 As in *Grey*, the sole issue remaining before this Court is the search and seizure claim which alleges a violation of petitioner's Fourth Amendment rights. "Under *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), federal habeas corpus relief is not available on the ground that evidence produced at trial was the result of an unconstitutional search and seizure, unless the state denied the prisoner an opportunity for full and fair litigation of the claim." *Grey*, 933 F.2d at 121. Petitioner, who has litigated this claim both at the pretrial hearing and before the Appellate Division, makes no such argument. Accordingly, the search and seizure claim must also be denied.

## III. CONCLUSION

For the aforementioned reasons, Thebner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

SO ORDERED.