Tracy **HOWARD**, Petitioner,

v.

Peter J. **LACY**, Respondent.

No. 98 CIV. 6531(JES).

United States District Court, S.D. New York.

July 2, 1999.

Order Supplementing Report and Recommendation June 30, 1999.

---

Tracy Howard, Malone, NY, Pro se.

Kevin Scott Koplin, Asst. District Attorney, Bronx County, Bronx, NY, for Peter J. Lacy.

### ORDER

SPRIZZO, District Judge.

The above-captioned action having come before this Court, and Magistrate Judge Peck having filed a Report and Recommendation dated May 7, 1999, recommending that the petitioner's petition be denied, and the Court having extended petitioner's time in which to file objections to the Report and Recommendation, and the petitioner having filed an objection dated June 11, 1999, and the Court having considered all matters raised, it is

**ORDERED** that the Court adopts Magistrate Judge Peck's Report and Recommendation, and it is further

**ORDERED** that the instant petition shall be and hereby is dismissed, and it is further

**ORDERED** that as petitioner has not made a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253, no certificate of appealability shall issue, and it is further

**ORDERED** that the Clerk of Court shall dismiss the above-captioned action.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

To the Honorable John E. Sprizzo, United States District Judge.

Petitioner Tracy Howard seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, from his conviction of five counts of first degree robbery. (Pet. ¶ 1; Howard Br. at 2.)[1] *See People v. Howard*, 235 A.D.2d 232, 232, 653 N.Y.S.2d 102, 103 (1st Dep't), *appeal denied*, 89 N.Y.2d 1036, 659 N.Y.S.2d 867, 681 N.E.2d 1314 (1997). Howard's petition alleges that (1) the state unconstitutionally consolidated the two indictments under which he was convicted (Pet.¶ 12(A)); (2) he was denied his constitutional right to a speedy trial (Pet. ¶ 12(B)); and (3) suggestive pretrial identifications deprived him of due process (Pet. ¶ 12(C)).

For the reasons set forth below, I recommend that Howard's petition be denied. Howard's identification and unconstitutional consolidation of indictments claims are unexhausted, not amenable to further state court review, and therefore procedurally barred from habeas review; Howard's constitutional speedy trial claim is ripe for habeas review but is meritless under the four-part balancing test set down by the Supreme Court for use in analyzing speedy trial claims.

1. Howard's habeas petition was filed in the Northern District of New York, which trans-

### FACTS

On April 17, 1990, a Bronx Grand Jury indicted Howard (Indictment No. 3259–90) for acting in concert to commit five counts each of first and second degree robbery (and related lesser offenses), in connection with two robberies at a grocery store at 822 Morris Avenue on January 15, 1990, and March 4, 1990. (Koplin Aff. ¶ 4 & Ex. 2: State 1st Dep't Br. at 3; Koplin Aff. Ex. 1: Howard 1st Dep't Br. at 4, 11, 25; Howard Br. at 6.)

On July 31, 1990, a Bronx Grand Jury filed a second indictment (No. 5932–90) accusing Howard of acting ·in concert to commit three counts each of robbery first and second degree robbery in connection with a robbery of the Melisa Grocery at 614 Morris Avenue on March 17, 1990. (Koplin Aff. ¶ 5 & Ex. 2: State 1st Dep't Br. at 3; Koplin Aff. Ex. 1: Howard 1st Dep't Br. at 4, 11, 25; Howard Br. at 6.)

The State moved to consolidate indictments 5932–90 and 3259–90 pursuant to N.Y. CPL § 200.20(2)(c) "on the grounds that both indictments alleged incidents of armed robberies that are 'the same or similar in law.'" (Koplin Aff. Ex. 1: Howard 1st Dep't Br. at 25; *see also* Koplin Aff. ¶ 6 & Ex. 1 at 11, 13; Howard Br. at 6.) On December 19, 1990, the Supreme Court granted the consolidation, with leave for Howard to renew his objection at a later date. (Koplin Aff. ¶ 6 & Ex. 2: State 1st Dep't Br. at 13; Koplin Aff. Ex. 1: Howard 1st Dep't Br. at 12, 25; Howard Br. at 7.)

On June 28, 1991, Howard's attorney renewed his objection on the ground that consolidation would be "overly prejudicial" to Howard:

> I think that there's three matters that we have to take up, ... and the third matter is the matter of the consolidation of the two indictments.

ferred it to this Court.

If Your Honor will recall, back—I don't have a date on it. The District Attorney's Office made a motion to consolidate the two indictments before Your Honor, Your Honor granted that motion but gave me leave to reargue your order granting a consolidation after the Wade Hearings were concluded.

Now, the basis of my argument to prevent a consolidation of the two indictments was, number one, that it would be overly prejudicial for Mr. Howard to go to trial on three separate robberies rather than the two robberies that involved the same witness and that is on Indictment 3259 of 1990.

We now have a situation where he would be going to trial on three separate robberies, on three separate dates, two of those would involve the same store and the same alleged witness, but the third one was on a different date involving different witnesses.

So, in addition to the prejudicial effect that I think it would have, we also have a situation here where the identification testimony, I believe, on Indictment 3259 of 1990 is much stronger than the identification testimony on Indictment Number 59[3]2 of 1990.... [T]herefore, if a jury felt that Mr. Howard was involved in the robberies charged in 3259, they might also convict him for the robbery in 59[3]2; although the evidence of identification in that matter was much weaker.

(6/28/91 Wade Tr. at 30–33.) The trial court denied Howard's objection, thus reaffirming the consolidation. (*Id.* at 46.)

On September 26, 1991, Howard's scheduled trial date, Howard's counsel filed a motion to dismiss pursuant to N.Y. CPL § 30.30 and the Sixth and Fourteenth Amendments, alleging denial of the right to a speedy trial. (*See* 10/24/91 Duffy Op. at 1.) The trial court denied the motion, holding:

As to that branch of defendant's motion for dismissal of these charges based upon the Sixth Amendment to the United States Constitution, it is denied. No facts have been set forth to support the assertion that defendant's constitutional right to a speedy trial has been denied in this matter. (See *People v. Taranovich,* 37 N.Y.2d 442, 373 N.Y.S.2d 79, 335 N.E.2d 303).

The Court accordingly now turns to the second branch of defendant's motion based upon statutory "speedy trial" considerations under CPL § 30.30....

From these calculations, the Court determines that the defendant has shown, by his papers, that the People are chargeable with no more than 156 days. As this is well within the 183 day statutory period, the defendant has failed, in his papers, to show the People have exceeded their time.

(10/24/91 Duffy Op. at 3.)

Howard's trial began in November 1991 (Tr. at 1–2, 18, 19), and on December 10, 1991, the jury convicted Howard on the two consolidated indictments of five counts of first degree robbery, finding him not guilty of two additional first degree robbery counts. (Tr. at 615–21.) On January 27, 1992, Howard was sentenced to five concurrent terms of seven to twenty-one years, to run consecutively to a two to six year sentence he had previously received in New York County for another robbery. (1/27/92 Sentence Tr. at 9; Koplin Aff. ¶ 7; Howard Br. at 9.) *See also People v. Howard,* 235 A.D.2d 232, 232, 653 N.Y.S.2d 102, 102–03 (1st Dep't 1997).[2]

---

**2.** Howard pled guilty and was convicted in New York County of attempted robbery in the first degree and was sentenced to two to six years imprisonment on December 12, 1991. *People v. Howard,* 235 A.D.2d at 232, 653 N.Y.S.2d at 102–03. The New York County conviction resulted from a robbery Howard committed with an accomplice "on or about October 14, 1989, at 156th Street and Amsterdam Avenue" in New York. (Howard Br. in 98 Civ. 6372 at 3.) The Court notes that Howard's separate habeas petition in 98 Civ. 6372 about his New York County conviction was dismissed by the Court, with Howard's con-

## Howard's Direct Appeal

In March 1996, Howard appealed his January 27, 1992 Bronx conviction on the grounds that: (1) the trial court erred in consolidating the two indictments; (2) the trial court erred in denying his motion to dismiss on speedy trial grounds pursuant to CPL § 30.20 and CPL § 30.30 and his constitutional rights; and (3) the conviction on indictment 5932–90 should be reversed since the complainant's trial identifications were tainted by unduly suggestive pretrial identification procedures. (Koplin Aff. ¶ 8 & Ex.1: Howard 1st Dep't Br. at 24–61; *see also* Pet. ¶ 9(D); Howard Br. at 9–10.)

On January 9, 1997, the First Department affirmed Howard's conviction, holding:

Defendant was not deprived of his statutory or constitutional right to a speedy trial. At most, only 165 days are chargeable to the People pursuant to CPL 30.30, even if the period preceding November 7, 1990 is included in the calculations. Contrary to defendant's contention, the People's November 28, 1990 declaration of readiness was not rendered "illusory" by their filing of a consolidation motion a few days later. Moreover, once they answered ready, they were not required to declare continuously their readiness after the motion to consolidate was granted. Defendant's remaining procedural and substantive arguments concerning the CPL 30.30 motion are without merit. *Nor did the almost 18–month delay between arraignment and trial deprive defendant of his constitutional right to a speedy trial.*

The court properly granted the motion to consolidate the two Bronx indictments involving three separate robberies of bodegas close in time and proximity to each other, where the identification evidence in the cases were strong, and the cases were not complex.

The photo array and line-up were not unduly suggestive, where, in each instance, our review of the photographs reveals that the fillers shared similar features with defendant and there was no "substantial likelihood that defendant would be singled out for identification."

*People v. Howard,* 235 A.D.2d 232, 232, 653 N.Y.S.2d 102, 103 (1st Dep't 1997) (citations omitted & emphasis added).

On March 11, 1997, Howard's counsel sought leave to appeal to the New York Court of Appeals, stating only that "there is a question of law in the above-captioned case as stated in Points I, II and III of appellant's [1st Dep't] brief which ought to be reviewed by the Court of Appeals." (Koplin Aff. Ex. 4: 3/11/97 Howard Applic. for Leave to Appeal at 1.) On April 16, 1997, Howard's counsel supplemented his leave application with a three and a half page single spaced letter that "focuses particularly upon the second point presented in the [1st Dep't] brief which pertains to appellant's claims that his state and constitutional rights to speedy trial were violated." (Dkt. No. 10: Howard 4/16/97 Supp. Leave Applic. at 1[3]; 4/26/98 Howard Br. at 10)

On April 29, 1997, the New York Court of Appeals denied leave to appeal. *People v. Howard,* 89 N.Y.2d 1036, 659 N.Y.S.2d 867, 681 N.E.2d 1314 (1997) (table).

## Howard's Present Federal Habeas Corpus Petition

Howard's present federal habeas petition raises three Sixth and Fourteenth Amendment claims: (1) denial of his right

sent, on April 2, 1999, to allow Howard to exhaust state remedies. (*See* Dkt. Nos. 9–10 in 98 Civ. 6372.)

**3.** ADA Koplin had stated that he was unable to find a copy of this supplemental letter in the DA or Court of Appeals' files. (Dkt. No. 9: Koplin 4/7/99 Aff. ¶¶ 4–6.) Howard, however, submitted a copy of the April 16, 1997 letter (Dkt. No. 10), and the Court has no reason to believe that the letter is not genuine. Accordingly, the Court will consider below the effect of the supplemental letter.

to a fair trial by the consolidation of the two indictments (Pet.¶ 12(A)); (2) denial of his right to a speedy trial (Pet.¶ 12(B)); and (3) denial of due process by the complainant's tainted identification (Pet. ¶ 12(C)).

## ANALYSIS

### I. PETITIONER'S CLAIMS NOT CLEARLY ARTICULATED IN HIS APPLICATIONS FOR LEAVE TO APPEAL TO THE NEW YORK COURT OF APPEALS (I.E., HIS CONSOLIDATION AND IDENTIFICATION CLAIMS) ARE NOT EXHAUSTED AND ARE PROCEDURALLY BARRED FOR HABEAS CORPUS REVIEW

Section 2254 codifies the exhaustion requirement, providing that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State...." 28 U.S.C. § 2254(b)(1)(A). See, e.g., Rose v. Lundy, 455 U.S. 509, 515–16, 102 S.Ct. 1198, 1201, 71 L.Ed.2d 379 (1982) ("The exhaustion doctrine existed long before its codification by Congress in 1948... in 28 U.S.C. § 2254"); Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438, (1971); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995); Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir.1990); Daye v. Attorney General, 696 F.2d 186, 190–94 (2d Cir.1982) (en banc); Jordan v. Lefevre, 22 F.Supp.2d 259, 261, 266 (S.D.N.Y.1998) (Mukasey, D.J. & Peck, M.J.). As the Supreme Court has made clear, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. at 518, 102 S.Ct. at 1203; accord, e.g., Jordan v. Lefevre, 22 F.Supp.2d at 266.

■ The Second Circuit has held that "[e]xhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had." Daye v. Attorney General, 696 F.2d at 191 n. 3; accord, e.g., Bossett v. Walker, 41 F.3d at 828 ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'"); Grey v. Hoke, 933 F.2d 117, 119 (2d Cir.1991) ("a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition"); Pesina v. Johnson, 913 F.2d at 54 ("We have held that the exhaustion requirement mandates that federal claims be presented to the highest court of the pertinent state before a federal court may consider the petition," citing Daye ); Jordan v. Lefevre, 22 F.Supp.2d at 266–67; Bass v. Scully, No. CV–92–0349, 1995 WL 347040 at *2 (E.D.N.Y. May 25, 1995); Brooks v. Kelly, No. 88–CV–0631E, 1993 WL 350188 at *3 (W.D.N.Y. Sept. 10, 1993); Thebner v. Miller, 788 F.Supp. 714, 717 (E.D.N.Y. 1992).

■ Howard's supplemental leave application, dated April 16, 1997, spent three and a half single-spaced pages detailing his speedy trial argument. (See Dkt. No. 10: Howard 4/6/97 Supp. Leave Applic. at 1–4.) That claim, therefore, is exhausted and ripe for federal habeas review.

■ Howard's other two claims—consolidation of the two indictments and suggestive identifications—however, are not exhausted. In his initial letter seeking leave to appeal to the New York Court of Appeals, Howard only stated that: "there is a question of law in the above-captioned case as stated in Points I, II and III of appellant's [1st Dep't] brief...." (Koplin Aff. Ex. 4: Howard Leave Applic. at 1.) This statement, merely referring to points in his First Department brief, is insufficient to satisfy the exhaustion/presentation requirement. In Grey v. Hoke, 933 F.2d 117 (2d Cir.1991), the petitioner argued one

claim in his leave to appeal letter to the New York Court of Appeals, and also attached his Appellate Division briefs, which had raised that issue plus two others. *Id.* at 20. The Second Circuit held that the claims only referred to in his attached briefs were not exhausted:

> Petitioner argues that by attaching his Appellate Division brief to his letter application to the Court of Appeals, he presented that court with an opportunity to rule on his sentencing and prosecutorial misconduct claims. He concedes, however, that his letter application requested that the Court of Appeals review only the search and seizure claim. The letter made no mention of the sentencing and prosecutorial misconduct claims. Under these circumstances, we disagree with petitioner's assertion that the Court of Appeals was presented with his sentencing and prosecutorial misconduct claims.

The fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned. The only possible indication that the other two claims were being pressed was the inclusion of a lengthy brief originally submitted to another court. This did not fairly apprise the court of the two claims. We decline to presume that the New York Court of Appeals has "a duty to look for a needle in a paper haystack." For a federal court to hold that a state court had the opportunity to rule on a constitutional claim as to which no ruling was requested, and then to rule on the merits of the claim itself, would undermine the very considerations of comity that the rules of exhaustion were designed to protect.

*Grey v. Hoke,* 933 F.2d at 120 (citations omitted).[4]

The district court decisions within the Circuit have extended *Grey*'s rule to situations, like Howard's where the application for leave to appeal to the New York Court of Appeals refers to the Appellate Division briefs. For example, in *Brooks v. Kelly,* No. 88–CV–0631E, 1993 WL 350188 (W.D.N.Y. Sept. 10, 1993), petitioner's application for leave to appeal stated that " 'other significant issues are also presented which are thoroughly articulated in' " petitioner's Appellate Division briefs, which were attached. *Id.* at *2. The District Court held that the claim was not exhausted:

> For a federal claim to be considered exhausted, it must have been presented

4. *Accord, e.g., Cardenas v. Superintendent, Malone Correctional Facility,* No. CV–94–5093 (CPS), 1996 WL 497138 at *3–4 (E.D.N.Y. Aug. 26, 1996) (excessive sentence claim procedurally barred where raised before 2d Dep't but not in application for leave to appeal); *DeLeon v. Hanslmaier,* No. CV–94–5512 (CPS), 1996 WL 31232 at *3 (E.D.N.Y. Jan. 19, 1996) ("The fact that petitioner attached his brief submitted to the Appellate Division [with his application for leave to appeal to the Court of Appeals] is not enough to satisfy the exhaustion requirement."), *aff'd mem.,* 104 F.3d 355 (2d Cir.1996); *Figueroa v. Kelly,* 95 Civ. 0216, 1995 WL 702327 at *2 (S.D.N.Y. Nov. 29, 1995) ("If a petitioner limits the issues to be reviewed in a letter application to the New York Court of Appeals, the other claims presented in his or her Appellate Division brief are not deemed exhausted under the *Lundy* requirement.... [but] should be deemed procedurally forfeited for purposes of federal habeas review where the petitioner is now procedurally barred from presenting those claims to the state court."); *McGann v. Kelly,* 891 F.Supp. 128, 134 (S.D.N.Y.1995) ("By failing to raise his ineffective assistance of counsel claim in his leave application, petitioner did not fairly apprise the [N.Y.] Court of Appeals of the factual and legal premises underlying his claim."); *Bass v. Scully,* 1995 WL 347040 at *3; *Lynes v. Mitchell,* 894 F.Supp. 119, 123 (S.D.N.Y.1995), *aff'd mem.,* 104 F.3d 355 (2d Cir.1996); *Morales v. Keane,* No. CV–94–2379 (RR), 1995 WL 235222 at *13 n. 9 (E.D.N.Y. April 13, 1995); *Smith v. Keane,* No. CV–94–0514, 1995 WL 87330 at *2 (E.D.N.Y. Feb. 10, 1995); *Esquilin v. Walker,* No. CV–91–4608, 1992 WL 151903 at *2 (E.D.N.Y. June 16, 1992), *aff'd mem.,* 990 F.2d 624 (2d Cir.1993); *Cornielle v. Riley,* No. CV–92–1018, 1992 WL 142009 at *2 (E.D.N.Y. June 16, 1992).

to the highest state court. A petitioner is not deemed to have presented a claim to the New York State Court of Appeals simply by attaching an Appellate Division brief without further elaboration of the claim in the petition for leave to appeal. [Citing *Grey v. Hoke.*] Further, *a petitioner has not fulfilled the exhaustion requirement by having made in the application for leave to appeal general reference to claims in the attached appellate brief meriting review.*

*Brooks v. Kelly,* 1993 WL 350188 at *3 (citations omitted & emphasis added).

Similarly, in *Thebner v. Miller,* 788 F.Supp. 714 (E.D.N.Y.1992), the petitioner raised one claim in detail in his application for leave to appeal to the New York Court of Appeals, and included the additional sentence that " '[n]umerous other issues are raised in defendant-appellant's brief all of which deserve review by this court.' " *Id.* at 717. The District Court held that petitioner's "inclusion in his application to the Court of Appeals of a single sentence which refers, in a general way, to the various claims raised in his sixty-seven page brief to the Appellate Division, is insufficient to fairly apprise the Court of Appeals of the factual and legal issues in those claims." *Id.* at 717 (citing *Grey* ); *see also Jordan v. Lefevre,* 22 F.Supp.2d at 261, 268; *Benitez v. Senkowski,* 97 Civ. 7819(DLC), 1998 WL 668079 at *8 n. 7 (S.D.N.Y. Sept. 17, 1998) (Cote, D.J. & Peck, M.J.); *Ojeda v. Artuz,* 96 Civ. 5900, 1997 WL 283398 at *3 (S.D.N.Y. May 29, 1997); *Morrison v. McClellan,* 903 F.Supp. 428, 430 (E.D.N.Y.1995); *Marrero v. Keane,* 93 Civ. 3573 (PLK), 1995 WL 66660 at *1 (S.D.N.Y. Feb. 16, 1995) (reference to "Points I and II" of Appellate Division brief not sufficient under *Grey;* "Presentation requires more than a 'general reference' to the issues presented in an attached brief.") (citing *Grey v. Hoke, Brooks v. Kelly* and *Thebner v. Miller* ); *Matias v. Hoke,* 703 F.Supp. 324, 325 (S.D.N.Y.1989) (Sprizzo, D.J.)[5]

Thus, under *Grey* and its progeny, Howard's reference in his leave to appeal appli-

---

5. There is a contrary line of cases from the Eastern District of New York. *See Spence v. Superintendent, Great Meadow Correctional Facility,* 987 F.Supp. 151, 161 (E.D.N.Y.1997) (distinguishes *Grey* as case where leave to appeal letter "reflect[ed] an abandonment of" the legal claims not directly raised in that letter); *Manning v. Artuz,* No. 94–CV–3325 (SJ), 1996 WL 294359 at *3–4 (E.D.N.Y. May 29, 1996) (distinguishes *Grey* because the "fair import" of letter application's reference to Appellate Division briefs was "that Petitioner was requesting the New York Court of Appeals to review the same claims that were advanced in the Appellate Division."); *Meatley v. Artuz,* 886 F.Supp. 1009, 1013–14 (E.D.N.Y.1995) (where no specific claim raised in letter to N.Y. Court of Appeals and Appellate Division briefs were attached to the letter, claims raised in bold headings in those briefs deemed exhausted); *Melendez v. Scully,* No. CV–91–2497 (RR), 1993 WL 41769 at *4 (E.D.N.Y. Feb. 10, 1993) (distinguishes *Grey* as case of abandonment of claim while Melendez's counsel's leave to appeal letter argued one issue and also stated that he relied on the attached Appellate Division briefs as to other issues).

The Court is not persuaded by these cases. *Grey* 's result should not change merely because the Appellate Division briefs are not only attached to the application for leave to appeal to the New York Court of Appeals but are referred to in that application. To preserve an issue for federal habeas review, the petitioner must present it in the application for leave to appeal to the New York Court of Appeals. Discussion of why appeal should be granted on one issue, and then a passing reference to other issues in enclosed briefs, does not fairly apprise the New York Court of Appeals of the claims to be reviewed. To hold otherwise would require the Court of Appeals to read through lengthy briefs in search of issues deserving of review. In other words, such a holding would create "a duty to look for a needle in a paper haystack." The Court therefore believes the line of cases cited in text above better reflect the Second Circuit's *Grey* decision. *Accord, Jordan v. Lefevre,* 22 F.Supp.2d at 268 & n. 4. As Judge Mukasey stated in adopting my Report and Recommendation in *Jordan v. Lefevre,* the Eastern District "cases subvert *Grey,* and also rely on a case that antedates and was implicitly overruled by *Grey.... Grey* controls on the issue of whether grounds for appeal were properly presented in the Court of Appeals." *Jordan v. Lefevre,* 22 F.Supp.2d at 262.

cation to his Appellate Division briefs is not sufficient, and all of his claims except his speedy trial claim are not exhausted.

■ Howard, however, would be procedurally barred from raising these claims now in the New York Court of Appeals. As the Second Circuit explained in *Grey v. Hoke:*

> Here, New York procedural rules plainly bar petitioner from attempting to raise [the claims he raised before the Appellate Division but not in his application for leave to appeal] before the New York Court of Appeals. Petitioner cannot again seek leave to appeal these claims in the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. *See* N.Y. Court Rules § 500.10(a). Collateral review of these claims is also barred because the issues were previously determined on the merits on direct appeal. *See* N.Y.Crim. Proc. Law § 440.10(2)(a); *see also* N.Y.Crim. Proc. Law § 440.10(2)(c) (barring review if a claim could have been raised on direct review)....
>
> We agree with the state, however, that petitioner's forfeiture in state court of [the claims not adequately raised before the N.Y. Court of Appeals] bars him from litigating the merits of those claims in federal habeas proceedings, absent a showing of cause for the procedural default and prejudice resulting therefrom. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–2509, 53 L.Ed.2d 594 (1977). Petitioner makes no showing of cause or of prejudice. The [claims not raised before the Court of Appeals] must therefore be dismissed without reaching the merits.

*Grey v. Hoke,* 933 F.2d at 120–21; *accord, e.g., Jordan v. Lefevre,* 22 F.Supp.2d at 262, 269; *Bass v. Scully,* 1995 WL 347040 at *3; *Marrero v. Keane,* 1995 WL 66660 at *2; *Brooks v. Kelly,* 1993 WL 350188 at *3; *Thebner v. Miller,* 788 F.Supp. at 717–

18; *see also, e.g., Bossett v. Walker,* 41 F.3d at 828–29. As modified and clarified by more recent Supreme Court case law, to avoid a procedural default, a habeas petitioner must " " 'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice,' " " *i.e.,* a showing of "actual innocence." *Gibriano v. Attorney General,* 965 F.Supp. 489, 493 n. 5 (S.D.N.Y. 1997) (Sprizzo, D.J. & Peck, M.J.) (quoting *Ellman v. Davis,* 42 F.3d 144, 147 (2d Cir.1994) (quoting *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2564, 115 L.Ed.2d 640 (1991)), *cert. denied,* 515 U.S. 1118, 115 S.Ct. 2269, 132 L.Ed.2d 275 (1995)); *see also, e.g., Lebron v. Mann,* 40 F.3d 561, 564 (2d Cir.1994); *Jordan v. Lefevre,* 22 F.Supp.2d at 269.

Here, Howard has not alleged cause and prejudice nor has he made a showing of actual innocence. Thus, his consolidation and identification habeas claims should be dismissed as procedurally defaulted.

## II. *HOWARD'S SPEEDY TRIAL CLAIM LACKS MERIT*

■ It is black letter law that a defendant is guaranteed a speedy trial by the Sixth and Fourteenth Amendments to the Constitution. *E.g., Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). As the Supreme Court recognized, however:

> The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused....
>
> · A second difference between the right to speedy trial and the accused's other

constitutional rights is that *deprivation of the right may work to the accused's advantage.* Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof. *Thus,* unlike the right to counsel or the right to be free from compelled self-incrimination, *deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself.*

Finally, and perhaps most importantly, *the right to speedy trial is a more vague concept than other procedural rights.* It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial.

*Barker v. Wingo,* 407 U.S. at 519–21, 92 S.Ct. at 2186–87. The Supreme Court recognized that some states had adopted bright line procedural rules, but the Court could not adopt a similar rule since that "would require this Court to engage in legislative or rulemaking activity." *Id.* at 523, 92 S.Ct. at 2188.

■ The Supreme Court therefore adopted a "balancing test." *Id.* at 529–30, 92 S.Ct. at 2191–92. The Supreme Court in *Barker* identified four factors which guide a court's determination of whether a defendant was denied his right to a speedy trial: "[1] Length of delay, [2] the reason for the delay, [3] the defendant's assertion of his right, and [4] prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192; *accord, e.g., id.* at 530–33, 92 S.Ct. at 2192–93; *United States v. Jones,* 129 F.3d 718, 724 (2d Cir.1997), *cert. denied,* —— U.S.

——, 118 S.Ct. 2075, 141 L.Ed.2d 150 (1998); *United States v. Lainez–Leiva,* 129 F.3d 89, 91–92 (2d Cir.1997); *Rayborn v. Scully,* 858 F.2d 84, 89 (2d Cir.1988), *cert. denied,* 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989); *Flowers v. Warden,* 853 F.2d 131, 132 (2d Cir.), *cert. denied,* 488 U.S. 995, 109 S.Ct. 563, 102 L.Ed.2d 588 (1988); *McKenzie v. Herbert,* 969 F.Supp. 1, 3 (E.D.N.Y.1997); *Dunavin v. Leonardo,* No. 95–CV–296 RSP/GJD, 1997 WL 151771 at \*3, \*14 (N.D.N.Y. March 31, 1997) (Pooler, D.J.); *Imoh v. Reish,* No. 92 CV. 4404 (SJ), 1995 WL 428705 at \*2 (E.D.N.Y. July 12, 1995); *Amable v. Scully,* 91 Civ. 4694, 1993 WL 300036 at \*3 (S.D.N.Y. Aug. 4, 1993); *Cao v. Mann,* 89 Civ. 5312, 1990 WL 89363 at \*3 (S.D.N.Y. June 18, 1990); *Hart v. Leonardo,* 88 Civ. 5761, 1990 WL 89364 at \*2 (S.D.N.Y. June 15, 1990).

The Supreme Court in *Barker* added:

We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193; *accord, e.g., United States v. Lainez Leiva,* 129 F.3d at 92; *Rayborn v. Scully,* 858 F.2d at 89; *Flowers v. Warden,* 853 F.2d at 132–33; *Dunavin v. Leonardo,* 1997 WL 151771 at \*14; *Cao v. Mann,* 1990 WL 89363 at \*3.

### A. *Length of Delay*

■ The Supreme Court in *Barker v. Wingo* noted that "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *accord, e.g., Ray-*

*born v. Scully,* 858 F.2d 84, 89 (2d Cir. 1988); *McKenzie v. Herbert,* 969 F.Supp. 1, 2 (E.D.N.Y.1997); *Velez v. People,* 941 F.Supp. 300, 318 (E.D.N.Y.1996); *United States v. Teyibo,* 877 F.Supp. 846, 858 (S.D.N.Y.1995) ("To determine whether a defendant's Sixth Amendment right to a speedy trial has been violated, the court must engage in a two-step inquiry. First, the court must determine whether the interval between the indictment and trial is 'presumptively prejudicial.' Second, the court must employ [the *Barker v. Wingo* ] balancing test....") (citations omitted).

In the instant case, the period between Howard's arrest on April 11, 1990 and the start of trial in November 1991, was approximately nineteen months. (*E.g.,* 10/24/91 Duffy Op. at 1.) The Supreme Court and the Second Circuit have found that no constitutional speedy trial violation existed in cases in which the period between arrest and trial was even longer. *See, e.g., Barker v. Wingo,* 407 U.S. at 533–34, 92 S.Ct. at 2193–94 (over 5 years); *United States v. Vasquez,* 918 F.2d 329, 338 (2d Cir.1990) ("The length of the delay here"—26 months—"was less extensive than that tolerated in other cases."); *Rayborn v. Scully,* 858 F.2d 84, 89 (2d Cir. 1988) (over 7 years); *United States v. McGrath,* 622 F.2d 36, 41 (2d Cir.1980) (24 months); *United States v. Lane,* 561 F.2d 1075, 1078 (2d Cir.1977) ("The delay here was quite lengthy approximately 58 months or just under five years but nevertheless was shorter than that in other cases in which no Sixth Amendment violation has been found."); *United States v. Infanti,* 474 F.2d 522, 527 (2d Cir.1973) ("the length of time from arrest to indictment was 21 months and from arrest to trial 28 months, neither extraordinary."); *United States v. Teyibo,* 877 F.Supp. at 858–59 ("an eighteen-month delay is considerably shorter than the delays in other cases in which courts have found no Sixth Amendment violation."); *Holmes v. Bartlett,* 810 F.Supp. 550, 562 (S.D.N.Y.1993) ("In this case, the length of delay, eighteen months, was considerably shorter than the delays in other cases where courts found no Sixth Amendment violation.").

Thus, the length of delay factor alone does not offer support for Howard's speedy trial claim.

### B. *Reasons For The Delay*

In analyzing this second factor, the Supreme Court in *Barker* cautioned that:

[D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *see also, e.g., Flowers v. Warden,* 853 F.2d 131, 134 (2d Cir.1988); *United States v. McGrath,* 622 F.2d 36, 41 (2d Cir.1980); *United States v. Lane,* 561 F.2d 1075, 1078–79 (2d Cir.1977); *United States v. Infanti,* 474 F.2d 522, 527–28 (2d Cir. 1973).

In his pretrial speedy trial motions, Howard claimed that a delay of 238 days should be charged to the State. (10/24/91 Duffy Op. at 2; Johnston 9/23/91 Aff. on Speedy Trial Motion, at 5–6.) The trial court, however, concluded that a delay of only 156 days was attributable to the State, while the remainder of the delay was excludable or attributable to Howard. (10/24/91 Duffy Op. at 4–8.) For example, the adjournment between January 9 and January 30, 1991 was found to have been requested by Howard's attorney (*id.* at 4); between August 19 and September 3, 1991, Howard's attorney was on vacation (Johnston 9/23/91 Aff. on Speedy Trial Motion, at 5); and on September 26, 1991, time

was tolled by the filing of Howard's speedy trial motion. (10/24/91 Duffy Op. at 8.) On appeal, the First Department held that "At most, only 165 days are chargeable to the People pursuant to CPL 30.30, even if the period preceding November 7, 1990 is included in the calculations." *People v. Howard*, 235 A.D.2d 232, 232, 653 N.Y.S.2d 102, 103 (1st Dep't 1997).[6]

Whether the delay attributable to the State was 165 days, the 238 days claimed by Howard below, or even the entire nineteen month period, since nothing in the record indicates a deliberate attempt by the State to delay the trial in order to hamper Howard's defense, this factor does not weigh in Howard's favor. *See, e.g., Flowers v. Warden*, 853 F.2d 131, 133–34 (2d Cir.1988) (no Sixth Amendment violation because 17–month delay was "due solely to 'institutional dysfunction,'" *i.e.*, court docket congestion); *United States v. McGrath*, 622 F.2d at 41 (no speedy trial violation because, *inter alia*, "[t]here is no evidence of bad faith or deliberate delays here"); *United States v. Lane*, 561 F.2d at 1079 (no speedy trial violation because, *inter alia*, "[w]hile the record here contains some rather long unexplained delays, there is no indication that these are attributable either to deliberate procrastination or even negligent inaction on the part of the Government."); *Amable v. Scully*, 91 Civ. 4694 (MGC), 1993 WL 300036 at *3 (S.D.N.Y. Aug. 4, 1993) (petitioner's "conclusory allegation" that "delay was due to the State's attempt to secure an 'unfair advantage' ... is not supported by any evidence of bad faith on the part of the State"); *Burress v. Henderson*, 814 F.Supp. 313, 322 (W.D.N.Y.1993) ("the record does not reflect any deliberate attempts by either side to delay the trial in order to aid or hamper the defense"); *Holmes v. Bartlett*, 810 F.Supp. 550, 562 (S.D.N.Y.1993) ("although the cause of delay is uncertain, nothing in the record suggests that the State of New York intended to delay the trial in this case or that the prosecutor obtained any strategic advantage from the delay"); *Velez v. People*, 941 F.Supp. 300, 318 (E.D.N.Y.1996).

### C. *Howard's Assertion of His Right*

As to the third factor, "the defendant's responsibility to assert his right" to a speedy trial, the Supreme Court has stated that:

> Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Barker v. Wingo*, 407 U.S. 514, 531–32, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972).

Howard asserted his speedy trial right in his motion to dismiss the indictments on statutory and constitutional speedy trial grounds. (Koplin Aff. Ex. 1: Howard 1st Dep't Br. at 47, 51). However, Howard did not assert the claim until September 26, 1991, the seventeenth-month of the nineteen-month delay. (*Id.*) Raising the claim on the eve of trial cuts against the petitioner. *See, e.g., United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir.1990) (third factor "weighs heavily" against petitioners where they "waited roughly 22 months before advancing their speedy trial claim,

---

**6.** Because the First Department did not explain how it reached its 165–day determination, this Court is not able to determine if the First Department's 165–day figure is a typographical error meant to uphold the trial court's 156–day calculation, or if the First Department attributed nine more days of delay to the State.

and this hardly renders plausible their contention that an expeditious resolution of their cases was a matter of pressing constitutional importance for them"); *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir.1980) ("third factor weighs against [petitioners who] waited until immediately before trial to file their motion to dismiss on speedy trial grounds"); *United States v. Lane*, 561 F.2d 1075 (2d Cir.1977) (petitioner's eve of trial speedy trial motion is "indicative of an interest in having the indictment dismissed, rather than of an interest in expediting the proceedings"); *Amable v. Scully*, 91 Civ. 4694 (MGC), 1993 WL 300036 at *3 (S.D.N.Y. Aug. 4, 1993) ("late assertion of his claim weighs against a finding that petitioner's right to a speedy trial was violated"); *Burress v. Henderson*, 814 F.Supp. 313, 322 (W.D.N.Y.1993) (delay in assertion of right until commencement of trial not "the type of 'aggressive' assertion of speedy trial rights necessary to warrant the relief sought"); *Dudley v. Dalsheim*, 526 F.Supp. 88, 93 (S.D.N.Y.1981) (20–month delay in asserting right until "last minute pre-trial motion ... mitigates against a finding that a defendant was denied a speedy trial"), *aff'd mem.*, 686 F.2d 110 (2d Cir.1982).

### D. *Prejudice*

As to the fourth factor, prejudice, the Supreme Court explained that:

A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Barker v. Wingo*, 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972) (fn. omitted). The Second Circuit has explained that "[a]lthough 'a showing of prejudice is not a prerequisite to finding a sixth amendment violation, courts generally have been reluctant to find a [constitutional] speedy trial violation in the absence of genuine prejudice.'" *United States v. Jones*, 129 F.3d 718, 724 (2d Cir.1997) (quoting *Rayborn v. Scully*, 858 F.2d 84, 94 (2d Cir.1988)); *Dunavin v. Leonardo*, No. 95–CV–296 RSP/GJD, 1997 WL 151771 at *15 (N.D.N.Y. March 31, 1997) (Pooler, D.J.) ("In the absence of a showing of prejudice, courts generally will not find a speedy trial violation unless all of the remaining *Barker* factors weigh heavily in favor of the [petitioner].")； *United States ex rel. Eccleston v. Henderson*, 534 F.Supp. 813, 816 (E.D.N.Y.) (prejudice is "most significant" *Barker* factor), *aff'd*, 697 F.2d 289 (2d Cir.), *cert. denied*, 459 U.S. 871, 103 S.Ct. 157, 74 L.Ed.2d 131 (1982).

Howard alleges he suffered prejudice from the delay because: (1) he had to "endure 18 months of pretrial incarceration," and (2) "[h]ad Bronx County not taken 18 months to proceed to trial Howard could have determined that the concurrent sentence offered in New York County with his disposition in the Bronx county was not lawful.... Had Howard known that it would have taken 18 months to go to trial and that he would be getting consecutive time Howard would have elected to accept the People's offer of 4–12 years as [the] plea agreement." (Howard Br. at 18)

Although the length of pretrial incarceration is relevant to the assessment of "prejudice" under *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, eighteen months of

pretrial incarceration (especially where much of the delay is not attributable to the State) is not sufficiently serious prejudice to cause a constitutional violation here in light of the other facts in the balance. *See, e.g., United States v. Vasquez,* 918 F.2d 329 (2d Cir.1990) (26 months "incarceration in the pretrial period was a hardship and must be included in the assessment of 'prejudice.' But, the circumstances here do not approach the prejudice suffered by defendants in cases where we have found a speedy trial violation." ') (quoting *Flowers v. Warden,* 853 F.2d 131, 133–34 (2d Cir.1988)); *United States v. McGrath,* 622 F.2d 36, 41 (2d Cir.1980) (despite 24–month delay from indictment to trial, "[a]bsent specific assertions" of "specific and substantiated prejudice arising from the delay," no constitutional violation); *McKenzie v. Herbert,* 969 F.Supp. 1, 3 (E.D.N.Y.1997) (no prejudice from 15–month incarceration despite petitioner's contention that "he was unable to assist in the preparation of his defense due to his pre-trial incarceration"); *Amable v. Scully,* 97 Civ. 4694, 1993 WL 300036 at *3 (S.D.N.Y. Aug. 4, 1993) ("Although petitioner was incarcerated during the nineteen month pre-trial period, this hardship is not sufficient prejudice to establish a violation of his constitutional right to a speedy trial when it is considered in the context of the other *Barker* factors."); *Burress v. Henderson,* 814 F.Supp. 313, 322 (W.D.N.Y.1993) (no prejudice from 19 month delay before trial; "While the interest·in preventing oppressive pretrial incarceration is one of the important interests enumerated in *Barker* as protected by the Sixth Amendment right to a speedy trial, . . . prejudice is usually measured in terms of how the delay has affected the ability of the defendant to prepare his defense.").

Howard's second claim that the delay affected his ability to evaluate the legality of the New York County plea agreement and sentence is without merit. In his petition, Howard fails to address how or why the length of the pretrial incarceration hindered his ability to assess the "legality" of the separate sentence offered or imposed in New York County (a conviction and sentence not the subject of the habeas petition) or how the delay affected his plea negotiations, or his plea analysis, in the Bronx or New York County cases. *See, e.g., United States v. Lainez–Leiva,* 129 F.3d 89, 92 (2d Cir.1997) (denies defendant's claim of prejudice because of possible loss of concurrent sentence, because he "had no right to a concurrent sentence" and trial court "was authorized to impose either a concurrent or consecutive sentence."); *United States v. Cyphers,* 556 F.2d 630, 636 (2d Cir.) (no constitutional speedy-trial violation from almost three year delay even though defendant's incarceration while awaiting trial in New York prevented a timely consideration of his parole in Ohio and prevented him from receiving a federal sentence partly concurrent with his Ohio sentence), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977).

The prejudice Howard suffered here does not approach the prejudice alleged by defendants in other cases where the Second Circuit nevertheless found no speedy trial violation. *See, e.g., United States v. McQuillan,* 525 F.2d 813, 818 (2d Cir.1975) (no speedy-trial violation even though defendant lost his job, and alleged that some of his witnesses became unavailable for trial); *United States v. Lasker,* 481 F.2d 229, 237 (2d Cir.1973) (prejudice was "insubstantial" where defendant alleged "general claims of prejudice, such as damage to reputation . . . and dulling of witnesses' memories," and two character witnesses for defendant died), *cert. denied,* 415 U.S. 975, 94 S.Ct. 1560, 39 L.Ed.2d 871 (1974); *United States v. Infanti,* 474 F.2d 522, 528 (2d Cir.1973) (no speedy trial violation from 28–month delay even though defendant alleged that two witnesses critical to his case had died, prosecution witnesses had memory lapses, and records allegedly critical to defendant's case had been destroyed); *United States v. Schwartz,* 464

F.2d 499, 505 (2d Cir.) (no speedy-trial violation even though defendant claimed destruction of records, impairment of witnesses' memory, and unavailability of a government official who could testify that defendant's transaction was legal), *cert. denied,* 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972). Howard has failed to allege sufficient prejudice.

### E. *Balancing All Four Barker Factors*

Having considered the four *Barker* factors in this case and all of the relevant circumstances, the Court finds that there was no Constitutional speedy trial violation in this case.

### CONCLUSION

For the reasons set forth above, the Court should deny Howard's petition for a writ of habeas corpus.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John E. Sprizzo, 40 Foley Square, Room 2201, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Sprizzo. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,*

513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72,

May 7, 1999.

### SUPPLEMENTAL REPORT AND RECOMMENDATION

In response to my May 7, 1999 Report and Recommendation, petitioner Tracy Howard, by letter dated June 11, 1999, asked the Court to dismiss his petition without prejudice so he could exhaust his unexhausted claims. By letter dated June 21, 1999, the State opposed, and by letter dated June 28, 1999, petitioner Howard renewed his request that his petition be dismissed without prejudice so he can "renew [it] when all state exhaustion has been completed."

Petitioner Howard's request would be appropriate if he would be able to raise the unexhausted claims in State court. However, as explained at pages 12–13 of my May 7, 1999 Report and Recommendation, New York procedural rules bar Howard from raising these issues before the New York Court of Appeals. Thus, his unexhausted claims would be procedurally barred in State court. Accordingly, it would be a waste of judicial resources— both in the State courts and if Howard were to bring the issues back to Federal court—to dismiss his petition without prejudice.[1]

---

1. The Court also notes that even if the petition were dismissed without prejudice, any subsequent federal habeas petition likely would be time barred by the AEDPA's one-year statute

of limitations. Thus, a without prejudice dismissal in practical effect likely would be a with prejudice dismissal as far as federal habeas review is concerned.

**172**

## *CONCLUSION*

For the reasons set forth above and in my original Report and Recommendation, the Court should deny Howard's habeas petition, and should not dismiss his petition without prejudice.

### *FILING OF OBJECTIONS TO THIS REPORT AND RECOMMEN- DATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John E. Sprizzo, 40 Centre Street, Room 2201, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Sprizzo. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).